## Farrar *v.* Fessenden.

A right of entry into land will pass by deed, although at the date of the conveyance the land may be holden adversely to the right of the grantor.

Affidavits of the party making an entry into land for the purpose of foreclosing a mortgage thereon, and of the witnesses thereto, and a copy of the published notice of such entry verified by affidavits duly recorded, are competent evidence of the entry and publication, without producing the original notice or the papers in which it was published.

The taxation of land to an individual for a long series of years and payment of those taxes by him, are competent evidence, tending to show ownership or at least a claim of ownership thereto, in him.

Taxation can only be proved by the records of the taxes, unless their loss be first shown.

Proof of the existence and transfer of mortgages and mortgage debts may properly be received to explain occupancy of the mortgaged premises by the mortgagees or their tenants.

An examined copy of an instrument which it is the duty of a public officer to record and give copies of, may be received in evidence, in any proper case, without proof of the original.

Farrar *v.* Fessenden.

Where, in a deed of land, reference is made to another deed as recorded in a particular book and page of the registry, for a description, a copy of the record of that deed is admissible in evidence, in connection with the deed in which the reference is made.

After proof of the original deed to himself, or of his title by descent or devise, a party may put in evidence an office-copy of a deed to which he is not a party, but which constitutes part of his chain of title, without showing the loss of the original.

Continued, open, and exclusive possession of land for more than twenty years, under claim and color of title, gives a perfect title thereto.

Entry upon and continued occupation of a portion of a lot, under a deed describing the whole thereof by metes and bounds, gives possession of all the lands embraced in the title under which the entry is made and the occupation continued.

It is not necessary that adverse possession, in order to be available within the statute of limitations, should commence or be continued under valid and effectual deeds. Where such possession is relied upon, the idea of a rightful title is excluded; the fact of possession, and *quo animo* it was commenced and continued, are the only tests.

WRIT OF ENTRY, brought to recover a tract of land situate in Mason, in this county, dated March 28, 1857 ; wherein the plaintiff counted upon his own seizin, and a disseizin by the defendant, within twenty years last past. Plea—*Nul disseizin.*

The plaintiff claimed title under Wendell Durant. He introduced a quitclaim deed of the demanded premises, from said Durant to himself, dated February 3, 1857, duly executed and acknowledged, and an office-copy of a warranty deed from Caleb Buckman to said Durant, dated November 29, 1825, duly executed, acknowledged and recorded, and proved that about 1830 or 1831 Wendell Durant was in possession of the demanded premises, claiming to own them.

It was admitted that the defendant, having purchased the land in May, 1855, afterwards entered upon it and cut off a large quantity of timber, and continued in possession, claiming title, at the date of the plaintiff's writ. It appeared that Wendell Durant removed to Vermont in 1831,

and that the demanded premises, since 1832, had been in possession of other parties. It did not appear that Wendell Durant had been upon, in possession of, taxed for, or in any way exercised any acts of ownership in regard to the demanded premises, since 1833, except to execute the quitclaim thereof to the plaintiff.

The plaintiff having rested his case, the defendant moved for a nonsuit, which was denied by the court.

The defendant also claimed title under Wendell Durant, through certain mesne conveyances, terminating in one to himself, and by virtue of continued adverse possession by those through whom he claimed for more than twenty years, and first introduced a warranty deed from George Thatcher to himself, dated May 30, 1855, duly executed, acknowledged and recorded, conveying to him the demanded premises in consideration of $4000; then a quitclaim deed from George C. Shattuck to said Thatcher, duly executed, acknowledged and recorded, dated March 2, 1855, made in consideration of $4000; next an office-copy of a mortgage, John Durant to Clark Parker, dated March 10, 1841, duly executed, acknowledged and recorded, made to secure a note of same date for $425, payable to said Parker, or order, and of an assignment of this mortgage and note by said Parker to George C. Shattuck, dated October 14, 1846, duly executed, acknowledged and recorded. In this mortgage, besides a particular description of the demanded premises, they are described as "the same premises conveyed to me by Wendell Durant by deed dated December 6, 1833, recorded in Hillsborough records, volume 176, page 201." The defendant also produced and proved the note described in the condition of this mortgage, with the endorsement of said Parker on the back thereof; also introduced the original affidavits of said Parker, Obadiah Adams, and Julia C. Brown, duly sworn to and recorded, testifying that on the 20th day of October, 1845, Parker, in the presence of the other two

witnesses, entered upon and took possession of the demanded premises, for the purpose of foreclosing, for condition broken, the aforesaid mortgage ; at the same time declaring the purpose of his entry, &c., in the ordinary form ; next introduced an original affidavit of said Parker, duly sworn to and recorded, reciting a copy of a notice of the possession taken as aforesaid, and testifying that said notice, which was in the usual form, was published in the Nashua Gazette and Hillsborough County Advertiser, a newspaper published at Nashua, in this county, on the 18th and 25th days of December, 1845, and on the 1st day of January, 1846 ; also put in evidence copies of said newspaper of those dates respectively, containing the aforesaid notice of foreclosure, printed in each of them, bearing date December 10, 1845 ; and also proved by one of the printers of said paper, at the time, its publication therein at those several dates. The plaintiff objected that the original notice printed in the paper was not produced ; but the witness testifying that it was not customary to preserve such notices, and that he did not know what became of it, the court overruled the objection. The defendant then introduced an office-copy of a quitclaim deed from Lemuel Parker to John Durant, dated and acknowledged March 9, 1841, and recorded March 10, 1841, and an office-copy of a quitclaim deed from John Durant to Lemuel Parker, dated the — day of —, 1830, acknowledged February 17, 1834, and recorded February 19, 1834, both conveying the demanded premises ; also a mortgage, duly executed, acknowledged and recorded, of the demanded premises, from John Durant to David Dutton, dated December 25, 1833, and an assignment, duly executed, acknowledged and recorded, on the back thereof, transferring said mortgage and the debt secured thereby from said Dutton to Daniel Adams, of Mont-Vernon ; and a further written assignment, duly

recorded, also on the back of said mortgage signed by said Daniel Adams, as follows :

"HILLSBOROUGH ss.   In consideration of three hundred dollars to me paid by Clark Parker, of Dunstable, Mass., the receipt whereof I hereby acknowledge, I hereby transfer and forever quitclaim to him, his heirs, &c., all my right and title to the within-described premises.

"Mont-Vernon, January 30, 1841.   DANIEL ADAMS."

To the admission of this mortgage and the assignments thereof the plaintiff objected, on the ground that the debt thereby secured had been paid.   The defendant admitted that the debt had been paid by Clark Parker, at or after the assignment, but contended that the mortgage and assignments were competent, as evidence of acts of ownership of the demanded premises by John Durant and those claiming under him, and as part of the *res gestæ*, tending to explain the occupancy of the premises under said Dutton and Adams, as proved by the testimony of David F. Hunt, hereinafter stated.

It was admitted that George C. Shattuck died testate after the date of his conveyance of the demanded premises to George Thatcher, as before stated, and a copy of his will, as proved in the county of Suffolk, Mass., and filed in the office of the probate court in this county, duly authenticated, was put in evidence by the defendant, by which it appeared that all the deceased's interest in the demanded premises was devised to his son, George C. Shattuck, and that said George and Nathaniel J. Bradlee were duly appointed executors.   The defendant then introduced an original assignment and release from said executors, dated May 31, 1855, duly executed, acknowledged and recorded, transferring said mortgage from John Durant to Clark Parker, and the debt thereby secured to George Thatcher, and releasing any interest which said executors or either of them might have in the demanded

premises, as heirs or residuary devisees or legatees of said deceased.

The defendant also introduced, against the plaintiff's objection, the original records of taxes in the town of Mason, by which it appeared that the demanded premises, sometimes without any description, sometimes by one description and sometimes by another, had been taxed as non-resident, to Lemuel Parker, from 1834 to 1844 inclusive, from 1845 to 1847 inclusive to John Durant, from 1848 to 1855 inclusive to George C. Shattuck, and in 1856 to the defendant; and proved that the taxes for 1841, 1842, 1844, and 1845, were paid by Clark Parker. The defendant offered to introduce and prove an original mortgage from John Durant to George Bancroft, of the demanded premises, dated December 12, 1844, duly executed, acknowledged and recorded, and an assignment thereof by George Bancroft to George C. Shattuck, dated October 14, 1846, duly acknowledged and recorded; and a further assignment of said mortgage and debt by the executors of said Shattuck to George Thatcher, dated May 31, 1855, but no note being produced, nor any evidence of the foreclosure of said mortgage, the court rejected the testimony.

David F. Hunt, a witness introduced by the defendant, testified that he was 57 years old last March, and lived in Mason from 1828 to 1857, during all which period he owned and occupied land adjoining the demanded premises on the west; that in 1828 there was no fence between his land and the demanded premises, it being woods on both sides the division line; that at that time about one fourth the demanded premises was cleared, and they had upon them an orchard and the remains of an old building; and after describing particularly the location of the demanded premises, and stating the adjoining owners from time to time, the witness proceeded as follows:

" I went into occupation of the demanded premises in

1833. I was clearing my lot and did not want to make a division fence—so I hired these premises. There being a wall next the road, I put up a cross fence. I first hired of John Durant; cannot say if more than one year; afterward I hired them one or two years of Lemuel Parker. I continued afterwards to pay him for two years. I next paid to Saul Sanders, as agent for Mr. Dutton—I think this was only for one year. I next hired of Dr. Adams, of Mont-Vernon, brother of Joel Adams. I settled with Joel as agent for his brother, several years—three or four. Then I hired of Clark Parker. He came there and claimed to own the land, and I made an arrangement with him. He came on to the premises, claimed to own them, and wanted me to look after them, and see that there were no trespasses, and that the taxes were paid. In return for this I was to let my cattle run upon the land, and did so. Whenever somebody else had not paid the taxes I paid them, and Clark Parker paid me. Afterwards Thomas Bancroft came there, claiming to act as agent for Dr. Shattuck, of Boston. I negotiated with him to take charge of the land and see to it. My cattle ran there some 23 or 24 years—all the time from my first occupation, in 1833, until the defendant claimed to own the lot. I gathered the apples. I never, during this whole period, knew of any claim by anybody to the land adverse to that of those under whom I occupied. My occupation of the land was open and visible. I had the exclusive occupation of the land for 23 or 24 years. Nobody cut anything on the land except me. I cut for fences. Those under whom I occupied once cut off hoop poles. Once, under Lemuel Parker, a man came and cut hoop poles. After the defendant was said to have purchased, he cut off hoop poles and timber. Defendant occupied the land from the time he bought it until I left Mason."

( *Cross examination.*) " The Durant lot ( demanded premises,) ran further south than my land. I built a fence

across from my land to the Elliot or Cathcart lot. This fence enclosed more than half the Durant lot. It was built in 1833. I fix the date by charges to Elliot, who then worked for me. I hired of John Durant in 1833, and hired him. I think I hired the premises of Lemuel Parker in 1834. There was a wooden fence on the north side of the demanded premises next to the Wright place, and some wooden fence on the east side next the road. There was a wooden fence on the south side of where my cattle went, which I made across from my lot to the Elliot or Cathcart lot. I kept up these fences until the spring of 1855, from 1833. I last repaired them in the spring of 1855. South of the fence I built across to Elliot's. The demanded premises were all woods. I did not occupy this portion of them, except to go in on the land occasionally to see if anybody had cut trees or timber. I noticed a few hoop poles had been cut between 1833 and 1840 or 1842. I paid taxes on the demanded premises more or less for 23 or 24 years—both money and highway taxes. I paid more than 10 or 12 years in all out of the 23 or 24 years. I think I settled up with Clark Parker, after he said he had sold to Shattuck, some 12 or 13 years ago."

There was considerable other testimony confirming that of Hunt as to his occupation of the premises, but none conflicting therewith.

The defendant then introduced, against the plaintiff's objection, an office-copy of a deed from Wendell Durant to John Durant, recorded in Hillsborough records, volume 176, page 201, dated December 6, 1833, acknowledged same day, and recorded December 26, 1833, conveying the demanded premises, with full covenants of warranty. Upon this copy, after the signature of " Wendell Durant," instead of the letters L. S., or anything else indicating the existence of a seal on the original, there was a horizontal mark, "——" which the plaintiff contended indicated the absence of any seal at the time of record. The instru-

ment was attested by two witnesses, acknowledged by Wendell Durant before a justice of the peace, as his " free act and deed," contained, at its close, the following words : " In witness whereof I, the said Wendell Durant, have hereunto set my hand and seal, this sixth day of December, A. D. 1833," and above the signatures of the witnesses the words, " Signed, sealed and delivered in presence of," and was in all other respects in the ordinary form of warranty deeds in this State.

A verdict was thereupon taken, by consent, for the defendant, subject to the opinion of the whole court.

*Sawyer & Stevens,* for the plaintiff.

*G. W. Morrison, F. A. Worcester,* and *B. F. Butler,* for the defendant.

FOWLER, J. The plaintiff having shown a conveyance of the demanded premises to Wendell Durant, in 1825, an entry by him thereon, claiming title under that conveyance, in 1830 or 1831, and a subsequent conveyance thereof from Wendell Durant to himself, in 1857, although the latter was made more than twenty years after possession shown in the grantor, made a *primâ facie* title in himself, and the nonsuit was, therefore, properly refused. *Whittemore* v. *Bean,* 6 N. H. 50 ; *Smith* v. *Smith,* 11 N. H. 459.

The statute expressly makes the affidavits of the party making an entry into land for the purpose of foreclosing a mortgage thereon, and of the witnesses thereto, as to the time, manner and purpose of such entry, and a copy of the published notice, verified by affidavit as to the time, place and mode of publication, recorded in the registry of deeds for the county in which the land is situate, competent evidence of such entry and publication; and it is not necessary to produce on trial either the original

notice, or the papers in which it has been published. Rev. Stat., ch. 131, sec. 16 ; Comp. Laws 292.

In *Little* v. *Downing*, 37 N. H. 355, it was holden that taxation of land for a long series of years to an individual, and his payment of those taxes, were competent evidence of his assent to and approval of the assignment of such land to him in severalty, as the owner thereof—in other words, of his ownership thereof. On the same principle the taxation of the premises in controversy to the various persons claiming title thereto under John Durant, for a long series of years, and the payment of those taxes by them, or by one of them under whom the defendant claimed, were competent evidence, tending to show ownership, or at least a claim of ownership, which was the material point in the present case, in those persons.

The records of taxes were properly received to prove the taxation, which, being matter of record, could be proved in no other way, unless the loss of the records were first shown.

The evidence of the existence of the mortgage of the demanded premises, and of the mortgage debt to David Dutton, and their subsequent assignment to Daniel Adams, was manifestly competent, as tending to explain the occupancy of those premises by Hunt under Dutton and Adams. So, too, the discharge and assignment of that debt and mortgage by Adams, were competent, in connection with the mortgage of the same premises about that time to Clark Parker, and tended to show the payment of a portion of the consideration for that mortgage to have been made by the removal of a prior incumbrance.

By the statute of this State it is made the duty of registers of deeds, in the several counties, to record all deeds and instruments brought to them for that purpose, and to give copies thereof, when required. Rev. Stat., ch. 22, sec. 5; Comp. Laws 83; N. H. Laws, Ed. 1830, 471, sec. 7.

Where it is made the duty of a public officer to record deeds and other instruments, and to furnish copies thereof, an examined copy of any instrument thus recorded may be received in evidence, in any proper case, without proof of the original. 1 Gr. Ev. secs. 91, 484, 485; *Hastings* v. *Blue Hill Turnpike Co.*, 9 Pick. 80; *Woods* v. *Banks*, 14 N. H. 101; *Ferguson* v. *Clifford*, 37 N. H. 86.

Where reference is made in a deed of land to another deed, as recorded in a particular book and page of the registry, for a description, a copy of the record of the deed thus referred to is admissible in evidence, in connection with the deed in which the reference is made. *Clough* v. *Bowman*, 15 N. H. 504.

After proof of the original deed to himself, or of his title, by descent or devise, a party may use an office-copy of a deed to which he is not a party, but which constitutes a part of his claim of title, as *primâ facie* evidence, without showing the loss of the original. *Harvey* v. *Mitchell*, 31 N. H. 582; *Homer* v. *Cilley*, 14 N. H. 85.

Upon these principles we think the copy of the deed from Wendell Durant to John Durant was clearly admissible, whether, at the time of its record or execution, it had a seal upon it or not. It was an office-copy of an instrument purporting to convey lands, duly recorded at the period of its date in the registry of deeds for the county in which those lands were situate, furnished by the officer having charge of the records, and authorized and required by law to furnish copies thereof; was a part of the defendant's claim of title, or color of title, and had been referred to in a deed, properly introduced as part of that title, as containing a description of the premises conveyed therein.

The testimony of Hunt and others tended to show that John Durant was in possession of the demanded premises, claiming to own them, in 1833, and that they had continued to be constantly, openly, visibly and exclusively occu-

pied by persons claiming under him, from that period until the date of the plaintiff's writ, in March, 1857, more than twenty-three years; that this continued occupation was under deeds from John Durant and his grantees, wherein the premises were described substantially as in the plaintiff's writ, purporting to convey the same by metes and bounds, and with covenants of warranty. Such continued and exclusive possession, under claim and color of title, was necessarily adverse, and, upon the authority of numerous decisions in this State, sufficient to give the defendant, who claimed under this possession, a good and perfect legal title to those premises, without regard to the question of colorable title in John Durant. Hunt occupied in 1834 under Samuel Parker, who held under a deed from John Durant; and John Durant being shown to have been in possession in 1833, his deed gave at least color of title. Lemuel Parker's subsequent re-conveyance to John Durant, who then immediately conveyed to Clark Parker, through whom the defendant claims, did not change or injuriously affect the colorable title originating in 1834, since possession constantly accompanied it. *Gage* v. *Gage*, 30 N. H. 420; *Newmarket Manufacturing Co.* v. *Pendergast*, 24 N. H. 54; *Hoag* v. *Wallace*, 28 N. H. 547; *Tappan* v. *Tappan*, 31 N. H. 41; *Cobleigh* v. *Young*, 15 N. H. 493; *Grant* v. *Fowler*, ( *ante*, page 101 ).

It has been suggested in the plaintiff's argument that the evidence did not show an actual occupation, by those under whom the defendant claims, for more than twenty years, of that portion of the lot in controversy lying south of the fence erected by Hunt. This is true, but Hunt entered in 1834 as tenant of Lemuel Parker, under a deed from John Durant, who was in possession in 1833, conveying the whole lot by metes and bounds, and continued his occupation under deeds of the same character for more than twenty years. This gave him constructive possession of all the land which the title under which he

entered and occupied embraced, because he must be presumed to have entered and occupied claiming according to that title. *Riley* v. *Jameson*, 3 N. H. 23; *Towle* v. *Ayer*, 8 N. H. 59; *Beck* v. *Young*, 11 N. H. 485; *Bailey* v. *Carleton*, 12 N. H. 15; *Sneed* v. *Parker*, 3 N. H. 49; *Hoag* v. *Wallace*, 28 N. H. 547; *Gage* v. *Gage*, 30 N. H. 420; *Tappan* v. *Tappan*, 31 N. H. 41.

Besides, the evidence showed that much the largest portion of the lot, including all the cleared lands, and a considerable portion of the woodland, were enclosed by a fence, which was permanently maintained for twenty-three or twenty-four years, and this might well have been found by the jury to have been such an open, visible possession of the lot as to give notice to everybody of a claim of title by the tenant to the whole.

The evidence, then, tending to show John Durant in possession, in 1833, of the demanded premises, a conveyance thereof by him to Lemuel Parker, and subsequently to Clark Parker, and an occupation by the grantees of John Durant, through whom the defendant claims for more than twenty successive years prior to the date of the plaintiff's writ, the verdict rendered by consent for the defendant must stand, without reference to the colorable title of John Durant, under what purported to be a deed from Wendell Durant on the 6th of December, 1833.

But we think it entirely clear that the instrument of conveyance from Wendell to John Durant, whether it had a seal upon it, when executed, or when recorded, or not, and whether Wendell Durant, and the plaintiff as his grantee, would or not be estopped to deny its validity as a deed, was at least sufficient to give to John Durant, and those claiming under him through it, by continued adverse possession for more than twenty years, color of title. The evidence tended strongly to show that John Durant entered on the premises claiming to hold and own them under this instrument. It was promptly

recorded in the proper place of record for conveyances of these premises, so that all the world had notice of its existence and the claim made under it. In the mortgage to Clark Parker, through whom the defendant claims directly, the land is described as the same conveyed to the mortgagee by this instrument, and reference is made not only to its date but to the volume and page in which it was recorded — all showing conclusively that John Durant claimed to own the premises by virtue of it.

Now, all the authorities agree that it is wholly immaterial, as to the effect of an entry and long continued occupation under a colorable title, whether that title be valid or not, and whether the instrument creating it be defective or not. *Riley* v. *Jameson*, 3 N. H. 23; *Towle* v. *Ayer*, 8 N. H. 59; *Buck* v. *Young*, 11 N. H. 485; *Bailey* v. *Carleton*, 12 N. H. 15; *Sneed* v. *Parker*, 3 N. H. 49; *Grant* v. *Fowler*, ( *ante*, page 101.)

Thus, a married woman's separate deed of her land, though absolutely void from its inception as a conveyance of the title, will give a color of title to the grantee, sufficient to extend an adverse seizin, by construction, to the limits of the land described in it. *Sanborn* v. *French*, 22 N. H. 249.

In *Jackson* v. *Newton*, 18 Johns. 355, the precise question involved in the present case was decided by the Supreme Court of New-York. There the jury found that the deed under which the defendant had occupied had no seal upon it. *Spencer*, C. J., in delivering the opinion of the court, says: "In the point of view in which we are now considering the case, it is immaterial whether the instrument were sealed or not. Had there been a seal, the title of Joshua Newton " [ under whom the defendant there claimed, as the defendant here claims under John Durant ] " would have been perfect without a possession, and in that light only is it material. In *Jackson* v. *Wheat*," [ 18 Johns. 40 ] " we decided, upon the authority of several

cases there referred to, that to constitute an adverse pos-
session it was only necessary that it should have been
under claim and color of title. We said that the defendant
was under no necessity of producing the deed under which
his grantor claimed title, though called for by the plain-
tiff. Suppose, we said, the deed had been lost, or, when
produced, was found to be defective — that could not have
destroyed the effect of the defendant's possession; and we
referred to repeated decisions, that a continued possession
for twenty years, under claim of right, ripens into a right
of possession which will toll an entry; and again, that it
had never been considered necessary, to constitute an ad-
verse possession, that there should be a rightful title.
Whenever this defence is set up the idea of such a title is
excluded; the fact of possession, and the *quo animo* it was
commenced and continued, are the only tests."

It is not necessary that an adverse possession, to be
available within the statute of limitations, should com-
mence or be continued under effectual deeds. Though
the possessor claim under written evidence of title, and
on producing that evidence it prove to be defective, yet
the character of his possession, as adverse, is not affected
by the defects of his title. If the entry be under color of
title, the possession will be adverse, however groundless
the supposed title may prove to have been. *Lafsombais* v.
*Jackson*, 8 Cow. 589; 13 Johns. 118; 3 Wend. 337; 6
Cow. 751; 1 Cow. 276; 1 Cow. 605; 5 Cow. 346; 5 Cow.
483.

Applying these doctrines to the case before us, it was
wholly immaterial, on the question of adverse possession,
whether the instrument of conveyance from Wendell to
John Durant was ever sealed or not. If it were sealed,
the defendant's title would have been perfect without any
possession. If not, the evidence was conclusive to show
that John Durant occupied the premises, and made re-
peated conveyances thereof, claiming to hold them in fee

by virtue of it; that he so expressly declared in his conveyance to Clark Parker in 1841, and that Clark Parker and his grantees, including the defendant, have continued to occupy them from that time to the present, claiming to hold and own them under this title from John Durant. There is no room for doubt, therefore, that the evidence tended strongly to show a continued occupation for twenty-four years, by those claiming the legal title in the demanded premises, through the color of title in John Durant, by virtue of the deed to him from Wendell; and occupancy and color of title are the only tests of effectual adverse possession.    With these views there must be

*Judgment upon the verdict.*