Rockingham
No. 83-055

CASPER SORENSON

v.

FRANKLIN R. WILSON

CASPER SORENSON & a.

v.

FRANKLIN R. WILSON

April 13, 1984

*Law Office of Robert C. Levine,* of Sanbornville (*Alfred J. T. Rubega* on the brief and orally), for the plaintiffs.

*James A. Sayer, Jr.*, of Salem, by brief and orally, for the defendant.

BROCK, J. The plaintiff Casper Sorenson brought two petitions, one individually and one with his wife, to quiet title to land in Salem claimed by the Sorensons and by the defendant, Franklin R. Wilson. The cases were consolidated for hearing, and a Master (*R. Peter Shapiro*, Esq.), after a hearing on the merits and a view of the property, recommended a decree in favor of the defendant on both petitions. The Superior Court (*Bean*, J.) approved the recommendation and entered judgment accordingly, from which the plaintiffs brought this appeal. We reverse and remand for a new trial.

In the discussion which follows, all deeds and other relevant instruments are referred to by the volume and page on which they are recorded in the Rockingham County Registry of Deeds.

On the sketch map appended hereto, which represents the configuration of the land before the recent alteration of the streams in the area, the land in dispute consists of the parcels labeled B and C, which have areas of roughly 4.8 and 2 acres, respectively. The plaintiffs' claim rests on a deed tendered to them in 1944 (vol. 1014, p. 321), which referred, for a description of the land conveyed, to an earlier deed in the chain of title, a deed tendered by William Lancaster to A. G. Bryant and recorded in 1910 (vol. 654, p. 26). The plaintiffs allege that the latter deed describes parcels B, C, and D.

The master found, however, that William Lancaster and his predecessor in title had acquired the land conveyed in 1910 through deeds that conveyed only parcel D (vol. 636, p. 381; vol. 588, p. 95). He further found that the earlier of those two deeds was tendered by the administrator of the estate of Varnum Merrill (probated in 1901), and that the probate records of that estate made no reference to land abutting the Spicket River. The master's implied conclusion was that only parcel D was properly in the plaintiffs' chain of title.

The defendant claimed title to parcels A and B through a deed tendered to him in 1962 (vol. 1647, p. 308). That deed was the latest in an unbroken chain of deeds purporting to convey the same piece of property, but describing it differently. The first deed in that chain (vol. 317, p. 162), tendered in 1844 by John J. Merrill to J. Rowell and M. Bailey, contained a precise description by metes and bounds of parcel A, and referred to it (accurately) as containing 14 acres, 140 square rods. Starting in 1870, later deeds in the chain described the property as containing 18 acres, but consistently referred to the property as "being the same land" as that conveyed in the 1844 deed (vol. 430, p. 392; vol. 441, p. 489; and others). Nevertheless, the master found that the "18 acre tract" conveyed to the

defendant encompassed parcels A and B, thus impliedly finding that the 1844 deed had conveyed the same land.

The defendant's claim to parcel C is based on his prior ownership of parcel E, acquired through a deed tendered to him in 1972 (vol. 2181, p. 311), and on the fact that one or more early deeds in the various chains of title to that area included parcel C, the latter parcel being the southern half of an area known as the "Carleton Meadow." The master found this sufficient basis for a ruling that title to parcel C was in the defendant. It is uncontradicted, however, that both the defendant's 1972 deed and that of his predecessor in title (vol. 2076, p. 388) described only parcel E or a portion of it, and that both deeds referred to a plan that clearly excluded parcel C from the land conveyed, and in fact referred to that parcel as belonging to the plaintiffs.

■■ "The interpretation of deeds is ultimately for this court...." *Robbins v. Lake Ossipee Village, Inc.*, 118 N.H. 534, 536, 389 A.2d 940, 941 (1978). While "our determination of the terms of the deed is based on the parties' intentions as properly found by the trial court," *id.*, the court's findings of fact may be overturned if they are unsupported by the evidence or if the court abused its discretion. *Clark v. Neergaard*, 121 N.H. 632, 636, 434 A.2d 599, 600 (1981).

■■ A deed which describes the land to be conveyed precisely and without ambiguity can only be construed as conveying the land described and nothing more or less. *Electric Light Co. v. Jones*, 75 N.H. 172, 175, 71 A. 871, 873 (1909). Further, a particular reference, such as that in later deeds to the description in the 1844 deed to parcel A, prevails over a more general reference such as "containing 18 acres more or less." *Drew v. Drew*, 28 N.H. 489, 497 (1854).

■ Accordingly, we hold that the master erred when he construed the 1844 deed describing parcel A to incorporate an intent contrary to that clearly expressed in the deed itself. Absent evidence of other conveyances into his chain of title, the defendant could have received no more than parcel A in 1962, since that was the only land conveyed by the 1844 deed.

■■ Similarly, the deeds conveying parcel E to the defendant and to his predecessor in title, read in conjunction with the plan referred to in those deeds, contained nothing that could be construed as intending to convey parcel C. Evidence of ownership of that parcel by earlier grantors in the chain of title is not admissible to determine the intent of the parties to later deeds, where that intent is unambiguously expressed in the deeds themselves. *Electric Light*

*Co. v. Jones supra.* We hold that parcel C was not conveyed by the 1972 deed to the defendant.

■ The master's findings regarding the plaintiffs' chain of title were, for the most part, amply supported by the evidence. Early deeds to the "Carleton Meadow" (vol. 371, p. 214; vol. 318, p. 425) clearly conveyed parcel C, together with portions of parcel E. The plaintiffs concede that their alleged predecessor in title, Varnum Merrill, never owned any part of the "Carleton Meadow"; nor is there any indication in the record of a later conveyance of parcel C into the plaintiffs' chain of title. Because all the deeds conveying all or part of the "Carleton Meadow" are not before us, we can say little as to the status of parcel C beyond holding, as we do, that there was no error in the master's finding that parcel C was not in the plaintiffs' chain of title.

On the record before us, we can trace the history of parcel B somewhat further. The master found that it was a part of the dower interest of Mary Merrill, who thus acquired a life interest in it after the probate of her husband Joshua Merrill's estate in 1837. This finding is supported by the probate records setting out Mary Merrill's dower interest, and by language in subsequent deeds to abutting land. The reversionary interest in parcel B was held jointly by the takers under the residuary clause in Joshua Merrill's will—his sons Abraham and John J. Merrill.

Contrary to the master's assertion, there is nothing in the record to indicate that Abraham Merrill ever conveyed his reversionary interest in parcel B to his brother John, although he did, in 1837 and 1839, convey his interest in parcel A and much of D (vol. 288, p. 312; vol. 304, p. 469). The 1839 deed conveyed land *bounded* by "Mary Merrill's Thirds," but made no mention of Abraham's reversionary interest. It also referred to the land conveyed as "my pasture," while parcel B is consistently described in the deeds as woodland.

Thus, when Abraham Merrill conveyed all his remaining interest in Joshua Merrill's estate to T. D. Lancaster in 1851 (vol. 345, p. 221), his reversionary interest in parcel B was included in that conveyance. T. D. Lancaster conveyed that same interest to Varnum Merrill in 1853 (vol. 354, p. 180), on the same day that Mary Merrill conveyed to Varnum Merrill all her dower interest in parcel B (vol. 354, p. 181). It appears that Varnum Merrill thereby acquired title to parcel B for the life of Mary Merrill, and an undivided half-interest in it thereafter. This explains why deeds in the claim of title to parcel A frequently refer to Varnum Merrill as a northerly abutter of that parcel.

■ There is nothing in the record to indicate that John J. Merrill ever conveyed his reversionary interest in parcel B. There is, however, some evidence of what happened to Varnum Merrill's interest in that parcel, and of why no reference to that parcel was found in the probate records of his estate. While the master made no finding in this regard, a deed admitted into evidence at the hearing below appears on its face to be a conveyance of parcel B, dated February 16, 1863, by Varnum Merrill to John J. Merrill, Jr. (vol. 396, p. 357). This, together with the probate records just mentioned and the previously mentioned deeds conveying parcel D between 1901 and 1910, is sufficient to support the master's finding that parcel B was not in the plaintiffs' chain of title, and could not have been conveyed to them in 1944. The plaintiffs' motion for a directed verdict was therefore properly denied.

In their brief, the plaintiffs argue that "since they brought a [p]etition to quiet title against the [d]efendant only, . . . the burden they carry is only to prove superior title *as against* the [*d*]*efendant*, by a '. . . balance of probabilities,' *Frew v. Dasch*, 115 N.H. 274, at 278 (1975), and not as against the whole world." (Emphasis in original.) This argument runs counter to the language of the statutes governing actions to settle disputed titles. Such actions are intended "to clear up all doubts and disputes and to quiet and settle the title to" disputed property. RSA 498:5-a.

■ To that end, the statutes require a plaintiff in his or her petition to "name the person or persons who may claim such adverse estate or interest." RSA 498:5-a. If that is impossible, the statutes (1) permit a plaintiff to name as defendants persons who have or may have some estate or interest in the disputed property, but who cannot be located or are unknown to the plaintiff; (2) permit the court to acquire jurisdiction over such defendants through liberal notice requirements; (3) permit the court in its discretion to appoint a guardian or other person to represent any such unknown defendants who are under legal disabilities; and (4) provide that "all such persons shall be concluded by any decree or judgment in respect to the real . . . property involved in such action." RSA 498:5-b.

■ The record before us indicates that several persons other than the current parties may have estates or interests in the property in dispute here: John J. Merrill and John J. Merrill, Jr., or their heirs or successors in interest; and one or more grantees in the chain of title to the "Carleton Meadow," or their heirs or successors in interest. To the extent that their rights would be concluded by a judgment in this case, they are necessary parties, *Jones v. Herbert*, 77 N.H. 282, 284, 90 A. 854, 855 (1914), and should have been joined

as defendants pursuant to RSA 514:10, either by name (if they could be discovered) or in accordance with the provisions of RSA 498:5-b noted above.

The case of *Frew v. Dasch,* 115 N.H. 274, 339 A.2d 18 (1975), cited by the plaintiffs, is distinguishable in that it involved a boundary dispute, where title to the land in question must have been in either the plaintiff or the defendant; that is not the case here.

 The burden here is on each party to prove good title as against all other parties whose rights may be affected by the court's decree. The trial court in this case could not "render judgment determining the questions and disputes and quieting and settling title to such [disputed] property," RSA 498:5-d, in the absence of parties with a duly recorded interest in the property, unless those parties claimed no interest and the petition so alleged, *see Lake Garda Improvement Assn. v. Battistoni,* 155 Conn. 287, 293–95, 231 A.2d 276, 280 (1967), or unless one of the named parties had acquired title to the disputed property through the doctrine of adverse possession, *see Farrar v. Fessenden,* 39 N.H. 268, 279 (1859). The latter issue remains open to litigation on remand, along with any other issue that, in the judgment of the trial court, may have been affected by the errors cited herein. *Griffin v. Theriault,* 107 N.H. 411, 418–19, 223 A.2d 655, 660 (1966).

 The remaining issues in the case may be dealt with briefly. The master erred in admitting into evidence a "Field Book" purportedly containing a partial survey by William Lancaster of the land he sold to A. G. Bryant in 1910. There was no evidence submitted as to its origin, preparation, or custody, and thus "[i]t could not qualify as an ancient document." *Russell v. Emerson,* 108 N.H. 518, 520, 240 A.2d 52, 53 (1968). On remand, this defect may be cured by any evidence tending to show that the survey was prepared by a "capable independent surveyor [], having no interest to misrepresent, and . . . produced from [a] reliable source[]," *Smith v. Forrest,* 49 N.H. 230, 239 (1870), or any other evidence sufficient to "guarantee that the contents are fairly trustworthy." *O'Haire v. Breton,* 102 N.H. 448, 450, 159 A.2d 805, 807 (1960).

 Evidence in the form of an acknowledged letter from the Salem Tax Collector regarding the collection of taxes on the disputed property was properly excluded. The tax records themselves or authenticated copies are the only proper evidence of who paid taxes on the land in question, unless loss of the records is first shown. *Farrar v. Fessenden, supra* at 277.

The plaintiffs' other arguments are without merit. Their claim of

impermissible bias on the part of the master is not supported by the record.

*Reversed and remanded.*

All concurred.