Grafton
No. 89-107

WOODSTOCK SOAPSTONE CO., INC.

v.

BUKK G. CARLETON

January 28, 1991

810

*Daschbach, Kelly & Cooper P.A.*, of Lebanon (*Deborah J. Cooper* on the brief and orally), for the plaintiff.

*Clauson, Smith & Whelan*, of Hanover (*William K. Koppenheffer* on the brief, and *K. William Clauson* orally), for the defendant.

BROCK, C.J.   This case involves an appeal by the defendant landlord and a cross-appeal by the plaintiff tenant from the Superior Court's (*Mohl*, J.) rulings in an action by plaintiff requesting declaratory and injunctive relief arising out of the lease between them. We affirm in part, reverse in part, and remand.

The defendant, Bukk G. Carleton (Carleton), appeals from the trial court's order regarding the lease Carleton holds with the plaintiff, Woodstock Soapstone Co., Inc. (Woodstock). Carleton argues that the court erred in (1) its interpretation of a tax escalator clause contained in the lease; (2) enjoining him from pursuing a possessory action in district court; and (3) denying his motion to dismiss Woodstock's petition for failure to join a necessary party. We find no error and affirm the trial court's rulings on these issues. Woodstock cross-appeals from the court's decision that the assignment of the purchase option to plaintiff was invalid and from the denial of a request for attorney's fees. We reverse the decision regarding the purchase option, and affirm the denial of attorney's fees.

Woodstock is a manufacturer and seller of wood stoves for residential use. Woodstock leased space in a building located in Woodstock, Vermont, and owned by Carleton. In 1985, Carleton requested that Woodstock consider relocating its business in order that Carleton could rent the space Woodstock occupied to other commercial tenants. Initially, Woodstock rejected the possibility of relocating, but Carleton persisted in his attempt to accomplish the relocation. Carleton agreed to (1) duplicate Woodstock's existing facilities in a newly constructed commercial building in West Lebanon, New Hampshire, (2) to duplicate the terms of the Vermont lease, and (3) to pay all of Woodstock's moving costs and out-of-pocket expenses incurred in the move. Carleton also agreed to an option whereby Woodstock could purchase the newly leased space as a commercial condominium within a set time frame, at a fixed price.

Woodstock agreed to the relocation and, after considerable negotiations, the parties executed a lease for the West Lebanon property, occupancy to commence on August 1, 1985. The lease included a tax escalator clause, similar to the one contained in the lease agreement for the Vermont property. The provisions of the new lease required Woodstock to pay a 60% pro-rata share of the amount of local real estate taxes which exceeded the taxes for the Lebanon fiscal tax year of April 1, 1985, to March 31, 1986. The clause reads as follows:

"Section 7.02. *Tenant's Participation in Real Estate Taxes.* Landlord will pay all real estate taxes and assessments which may be levied or assessed by the City of Lebanon, or any other lawful authority against the land and improvements comprising the building. Tenant shall pay, as Additional Rent, its pro-rata share of any increase or decrease in taxes over the Tax Year 1985–86. The Landlord shall at the beginning of each fiscal Tax Year estimate, on the basis of its experience and resonably [sic] anticipated charges therefore [sic], and the Tenant shall pay to Landlord, as Additional Rent ½₂ of its pro-rata share thereof. As soon as practical after the end of the fiscal tax year, Landlord shall determine the actual taxes and assessments, and an adjusting payment shall be made by Tenant or Landlord as outlined in paragraph 2.04."

The City of Lebanon (City) initially billed Carleton $22,945 in real estate taxes for the property occupied by Woodstock for 1985–86, which was the base tax year identified in the escalator clause. The assessed value of the land was $24,000, the assessed value of the building was $307,000, and the tax rate was $69.32 per $1,000 of assessed value. The City subsequently abated the taxes to $1,664, an amount which reflected the value of the land only, because the building was not considered taxable property as of April 1, 1985.

For the following tax year, 1986–87, Carleton was billed $24,113 in real estate taxes for the land, which was reassessed at $188,800, and the building, which was assessed at $871,600. Carleton used the total tax billed for 1986–87 ($24,113) and the abated tax for 1985–86 ($1,664), and calculated the amount Woodstock owed under the escalator clause to be $13,469.40. Carleton notified Woodstock of the amount and demanded payment.

Woodstock contended that Carleton's requested amount of $13,469.40 did not represent an increase in taxes for which Woodstock was responsible under the lease. Woodstock asserted that the

year 1986–87 should be the first full tax year from which future increases should be measured under the tax escalator clause. Woodstock made no payment to Carleton, who reaffirmed his demand and advised Woodstock that a failure to tender payment would result in termination of the lease.

On June 1, 1987, the City granted Carleton an abatement for the 1986–87 tax year based on the reduction of the assessed values of the land and the building to $151,000 and $619,000, respectively. As a result of this abatement, Carleton forwarded a new demand for payment to Woodstock, reflecting the reduction of the amount owed under the tax escalator clause from $13,469.40 to $9,358.43. Woodstock again made no payment to Carleton. On November 19, 1987, Carleton notified Woodstock that the lease had been terminated and served a notice to quit. Carleton then brought a landlord and tenant action in the Lebanon District Court seeking to evict Woodstock from the West Lebanon property.

As noted earlier, the lease agreement between Woodstock and Carleton contained an option giving Woodstock the right to purchase the space it leased. In March, 1988, Woodstock exercised this option, but Carleton refused to honor it. Woodstock's president had also negotiated with the general manager of the adjacent tenant, Life Sciences Manufacturing, Inc. (Life Sciences), to acquire an option that Life Sciences held to purchase from Carleton the remaining forty percent of the building, in exchange for Woodstock's giving Life Sciences a new and more favorable lease. In February, 1988, Woodstock exercised the option acquired from Life Sciences, and Carleton refused to honor it.

On March 10, 1988, Woodstock filed a petition in the superior court, seeking declaratory and injunctive relief on the tax issue and specific performance of the two purchase options. On April 1, 1988, the Superior Court (*Smith*, J.) issued an order temporarily enjoining Carleton from adversely affecting Woodstock's rights in the property. As a result of this injunction, the district court dismissed the eviction proceedings.

After trial, the Superior Court (*Mohl*, J.) ruled that the tax escalator clause, specifying 1985–86 as the base tax year for both land and building, was ambiguous. Since no tax was levied on the building in the 1985–86 tax year, that year could not be used as a base year in calculating the tax increases or decreases as contemplated by the parties. The trial court interpreted the contract to accurately reflect the parties' intent in entering into the agreement. With respect to

the taxes on the land, the court found that 1985–86 was the appropriate base year because that was the first full tax year on the land. As to the building, there was no tax actually paid in 1985–86, so the first full tax year for which a base tax on the building could be calculated was 1986–87. The court found that the evidence at trial was clear and convincing that the parties contemplated and intended this result when they agreed to the relocation of Woodstock to the West Lebanon premises and executed the leases to effectuate that agreement.

The trial court also ruled that Woodstock was not delinquent in its rental payments under the tax escalation clause because Carleton had improperly assessed those payments. Therefore, Woodstock was not in default of its lease obligations and properly exercised its option to purchase the premises. Woodstock's request for an order of specific performance of its option was granted.

However, with respect to the option to purchase that Woodstock had acquired from Life Sciences, the trial court ruled that it was ineffective. The court permitted Carleton to raise the defense that the assignment to Woodstock was made without authority. The court found that Robert Dukes, Life Sciences's general manager, had neither actual nor apparent authority to execute the assignment of the option, and therefore denied Woodstock's request for specific performance of that option.

The trial court also ruled that Woodstock was not entitled to attorney's fees because there was no evidence of bad faith by either the defendant or the plaintiff.

On appeal, Carleton first asserts that the court erred in interpreting the lease provision to mean that the 1985–86 base tax year was applicable to the land but not to the building. He argues that (1) the court improperly reformed the contract, (2) the court's interpretation does not reflect the intent of either party, and (3) the court failed to consider a general property reassessment which is reflected in the 1986–87 tax payment. Carleton asserts that the superior court lacked preemptive equity jurisdiction to enjoin the landlord and tenant action in the district court. Carleton also claims that the superior court erred in failing to join Life Sciences as a necessary party to the litigation.

Woodstock cross appeals, claiming that the superior court erred in ruling that Life Sciences's assignment of the purchase option was made without actual or apparent authority. Woodstock asserts that Carleton did not have standing to contest Dukes's authority as a de-

fense to enforcement of the option. Finally, Woodstock appeals from the superior court's decision not to award attorney's fees.

The issues we decide on appeal are (1) whether the superior court properly interpreted the escalation clause in the lease, (2) whether the court had preemptive equity jurisdiction permitting it to enjoin the landlord from taking any action to prejudice the tenant's rights in the property, (3) whether the court properly allowed the landlord to question the validity of the assignment of the purchase option and found that Life Sciences's assignment was made without authority, (4) whether the court properly found that Life Sciences was not a necessary party, and (5) whether the court properly denied Woodstock an award of attorney's fees. For the following reasons, we affirm in part, reverse in part, and remand.

## I. *Tax Escalation Clause*

We first consider the issue of the interpretation of the tax escalation clause contained in the lease. We have previously held that the proper interpretation of a lease is ultimately a question of law for this court to determine. *Appeal of Concerned Corporators of Portsmouth Sav. Bk.*, 129 N.H. 183, 198, 525 A.2d 671, 682 (1987). A lease is interpreted to reflect the parties' intentions at the time of contracting. *Id.* The language of a contract is ambiguous if the parties to the contract reasonably disagree as to the meaning of that language. *City of Manchester v. General Reinsurance Corp.*, 127 N.H. 806, 809, 508 A.2d 1063, 1065 (1986). In resolving the ambiguity the court must examine the contract as a whole, the circumstances surrounding execution, and the object intended by the agreement. *R. Zoppo Co. v. City of Dover*, 124 N.H. 666, 671, 475 A.2d 12, 15 (1984); *see Erin Food Servs., Inc. v. 688 Props.*, 119 N.H. 232, 235, 401 A.2d 201, 203 (1979).

Carleton contends that there is no ambiguity in the contract because the lease calls for the tenant to participate in any increase or decrease in taxes which "may" be levied upon the land and improvements comprising the building. There was no tax levied on the building during the base tax year 1985–86 as identified in the lease. The year 1986–87 was the first year that taxes were levied on the building. The parties intended that Woodstock participate in any increases over the base year 1985–86 in taxes actually paid on both the land and the building. Since no taxes were paid on the building for the tax year 1985-86, that year could not properly be applied as the base tax year for purposes of calculating Woodstock's share of

the building tax increases. Thus, there was an ambiguity to be resolved. We affirm the superior court's ruling to use 1985–86 as the base tax year for the land and 1986–87, the first year the building was taxed, as the base tax year for the building. *See Company v. Company*, 46 N.H. 249, 254–55 (1865) (express terms of a lease may be ignored where they contravene parties' clear intent).

The record also supports the trial court's finding that this was not a case for contract reformation because there was no variance between the actual agreement and the written lease. *See Patterson v. Tirollo*, 133 N.H. 623, 628, 581 A.2d 74, 77 (1990). Rather, there was an ambiguity in the lease in light of the parties' intentions and the unanticipated occurrence that there was no tax levied on the building during the base year 1985–86. Accordingly, we affirm.

## II. *Superior Court's Equity Jurisdiction*

■ The superior court properly issued an injunction enjoining Carleton from taking action which would prejudice the plaintiff's rights in the property. The superior court is a court of general jurisdiction and has authority to entertain actions in equity where there is no adequate remedy at law. RSA 491:7, 498:1, :2; *see King v. Thomson*, 116 N.H. 838, 839, 367 A.2d 1049, 1050 (1976). The district court, on the other hand, is a court of limited jurisdiction with powers conferred by statute. RSA 502-A:14 (Supp. 1989). Although it has the power to entertain possessory actions under RSA 540:13, the district court does not have equity jurisdiction. R. WIEBUSCH, 5 NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 2041, at 491 (1984).

Carleton filed a landlord/tenant action in the district court seeking to evict Woodstock from the property. Woodstock filed a petition in superior court seeking determination of the tax issue and specific performance of the purchase options. Carleton contends that the district court and the superior court have concurrent jurisdiction and that the district court action had priority because it was filed first. Although some of the issues before the superior court would have arisen in the district court case, Woodstock would not have been able to litigate in the district court the issues requiring specific performance. This is not a case where the courts have concurrent jurisdiction. Thus, the superior court injunction properly enjoined Carleton from jeopardizing Woodstock's rights in the property. *See* 42 AM. JUR. 2d *Injunctions* § 201 (1969).

III. *Carleton's Standing to Contest Validity of Purchase Option Assignment*

The trial court ruled correctly that it was Woodstock's burden to prove that it held a validly assigned option from Life Sciences. We conclude, however, that the determination that the defenses proffered by Carleton were relevant to that issue was erroneous.

■ The specific question to be addressed is whether Carleton could properly raise the defense that the assignment of the option, as between Life Sciences and Woodstock, was invalid. It is generally recognized that an obligor may raise only such defenses against an assignee of the obligation as it would have had against the assignor, at the time of the assignment. *See* RESTATEMENT (SECOND) OF CONTRACTS § 336(1), (2), at 67 (1981).

> "A *debtor may*, generally, *assert* against an assignee all equities or defenses existing against the assignor prior to notice of the assignment, any *matters rendering the assignment absolutely invalid or ineffective*, and the lack of plaintiff's title or right to sue; but, *if the assignment is effective to pass legal title, the debtor cannot interpose defects or objections which merely render the assignment voidable at the election of the assignor or those standing in his shoes.*"

(Emphasis added.) 6A C.J.S. *Assignments* § 115, at 780 (1975).

■ In the present case, Carleton raised the issue of Dukes's authority to assign the option on behalf of Life Sciences. This he cannot do. Not only is this not a defense that Carleton could have raised against the assignor, Life Sciences, but it is a defense that would merely render the assignment voidable at Life Sciences's election. Our review of the record indicates that Carleton has failed to raise any valid defense against the assignment. Accordingly, the trial court's ruling that the assignment was invalid is reversed.

IV. *Life Sciences as a Necessary Party*

■ The superior court denied defendant's motion to dismiss for failure to join Life Sciences as a necessary party. Life Sciences was not a necessary party to this action because its rights in the property would not be concluded by a judgment in this case. *See Sorenson v. Wilson*, 124 N.H. 751, 757–58, 476 A.2d 244, 247 (1984). The record supports the court's denial of the motion to dismiss.

## V. *Attorney's Fees*

■ Woodstock contends that the superior court should have awarded attorney's fees, based on the provision in the lease stating that the court may assess the winning party's fees to the losing party in the event of litigation. The record supports the court's conclusion that this lease provision was permissive rather than mandatory. The record also supports the superior court's finding that there was no bad faith which would justify an award of attorney's fees to Woodstock. Woodstock was not forced to litigate to secure a clearly defined and established right. *See Harkeem v. Adams*, 117 N.H. 687, 691, 377 A.2d 617, 619 (1977). There was a genuine dispute regarding lease payments and the assignment of the purchase option, and there is no evidence that this action was pursued without reasonable basis in the facts or claim of law. *See Town of Nottingham v. Bonser*, 131 N.H. 120, 132, 552 A.2d 58, 65 (1988), *cert. denied*, 109 S. Ct. 3163 (1989). Accordingly, we affirm the superior court's denial of an award of attorney's fees to Woodstock.

> *Affirmed in part; reversed in part; remanded for further proceedings consistent with this opinion.*

JOHNSON and HORTON, JJ., did not sit; the others concurred.