Belknap
No. 2006-782

TERRY L. HERSH & a.

v.

JOSEPH W. PLONSKI & a.

Argued: October 17, 2007
Opinion Issued: December 7, 2007

*Rath, Young and Pignatelli, P.C.*, of Concord (*Andrew W. Serell* on the brief and orally), and *Conklin & Reynolds, P.A.*, of Plymouth (*Deborah R. Reynolds* on the brief), for the petitioners.

*Sheehan Phinney Bass + Green, P.A.*, of Manchester (*Robert H. Miller* on the brief and orally), for the respondents.

DALIANIS, J. The respondents, Joseph W. Plonski and Lori Ann Rolan-Plonski, appeal the order of the Superior Court (*Smukler*, J.) denying their cross-petition to quiet title and granting the petition to quiet title filed by the petitioners, Terry L. Hersh, Barry R. Hersh, Gerard Gagne and Susan Gagne. We affirm.

## I. Background

The record supports the following: The parties own abutting properties in Sanbornton. The Hersh and Gagne properties are next to one another on Broadview Drive; the Plonski property is behind them. The Plonski property borders Chapman Brook on one side and Lake Winnisquam on the other. *See infra* App. A (map of Plonski property). The Plonskis access their property by way of a right of way, which is one rod (sixteen and one-half feet) wide, that begins on Broadview Drive and crosses the Gagne property.

All three properties were originally part of one tract. In 1898, the Plonski property was carved out of the tract and the right of way was created. *See id.* The Plonskis purchased the property in 2003.

In 1928, the Hersh and Gagne properties were separated pursuant to a subdivision plan. This subdivision plan showed a proposed thirty-foot-wide road between the Hersh and Gagne properties, which began at what is now Broadview Drive and ended at what is now the Plonski property. *See infra* App. B (1928 subdivision plan). This so-called "paper street" has never been constructed. The first half of its length is currently overgrown with trees and vegetation. The Plonskis' one-rod right of way and the thirty-foot-wide paper street overlap, however, for part of their lengths. *See infra* App. C. (Goodwin subdivision plan), App. D (Hersh subdivision plan).

The Hersh property was part of Lot 11 of the 1928 subdivision plan and was conveyed by the original fee holder to William E. and Almenia D. Harper in 1940. *See infra* App. B. The Hershes bought the property from Almenia Harper in 1986. In 1996, the Hershes filed a plan to subdivide their lot. *See infra* App. D. In 1998, they filed a boundary line adjustment plan and then sold one of their subdivided lots pursuant to that plan. *See infra* App. E (Hersh boundary line adjustment plan).

The Gagne property was part of Lot 12 and was conveyed by the original fee holder to Georgia E. Amidon in 1942. *See infra* App. B. In 1946, Amidon conveyed it to Maurice and Jeanne Hueber, who, in 1951, conveyed it to Ernest and Doris Lavallee. In 1952, the Lavallees conveyed the property to Wendell C. and Priscilla L. Williams, who, in 1970,

conveyed it to Stephen L. and Roberta A. Goodwin. In 1987, the Goodwins submitted a plan to subdivide their property into two lots. *See infra* App. C. In 1997, they conveyed Lot 1 of their subdivided property to Laurence S. and Diane P. Dibiaso. In 2005, the Goodwins conveyed Lot 2 of their subdivided property to the Gagnes.

In this case, the parties sought to quiet title to the paper street depicted in the 1928 subdivision plan. The Hershes and Gagnes asserted that because the Town never accepted the paper street, it never attained the status of a public highway and, therefore, belonged to the Hershes. In their cross-petition, the Plonskis contended that the paper street became a public highway either because the Town impliedly accepted it through public use or because the predecessors-in-title to the Gagne and Hersh properties rededicated it. Following a two-day bench trial, supplemented by a view, the trial court ruled in favor of the Hershes and Gagnes. This appeal followed.

## II. Analysis

### A. Standard of Review

■ In an action to quiet title, the burden "is on each party to prove good title as against all other parties whose rights may be affected by the court's decree." *Sorenson v. Wilson*, 124 N.H. 751, 758 (1984). A trial court may not render judgment quieting title to disputed property "in the absence of parties with a duly recorded interest in the property, unless those parties claimed no interest and the petition so alleged." *Id.* We will uphold the trial court's determination unless it is erroneous as a matter of law or unsupported by the evidence. *Riverwood Commercial Prop's v. Cole*, 134 N.H. 487, 490 (1991).

■ In their cross-petition to quiet title, the Plonskis claimed no private rights to the paper street, but rather contended that they, as members of the public, had rights to it as a public highway. The party asserting that a public road was established has the burden of demonstrating this by a balance of the probabilities. *See Gill v. Gerrato*, 154 N.H. 36, 43 (2006). We are bound by the trial court's findings with respect to the public status of the road unless they are not supported by the evidence or are erroneous as a matter of law. *Id.*; *see Blagbrough Family Realty Trust v. A & T Forest Prods.*, 155 N.H. 29, 36 (2007) (whether a public highway has been created is a question of fact).

### B. Dedication and Acceptance in General

■ A public highway may be created: (1) through the taking of land by eminent domain and the laying out of a highway by some governmental

authority; (2) through the construction of a road on public land; (3) through twenty years of use by the public before 1968; or (4) by dedication and acceptance. *Polizzo v. Town of Hampton*, 126 N.H. 398, 401 (1985); *see* RSA 229:1 (1993). At issue in this appeal is whether the paper street became a public highway by dedication and acceptance.

Dedication is "the devotion of land to a public use by an unequivocal act of the owner of the fee manifesting an intention that it shall be accepted and used presently or in the future for such public use." Siegel, *The Public Role in Establishing Private Residential Communities: Towards a New Formulation of Local Government Land Use Policies That Eliminates The Legal Requirements to Privatize New Communities in the United States*, 38 URB. LAW. 859, 916 (Fall 2006) (quotation omitted); 11A E. MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 33.02, at 308 (3d ed. 2000). Once a dedication is effective, "the public (represented by the municipality) gains land for a public purpose without cost." K. YOUNG, ANDERSON'S AMERICAN LAW OF ZONING 4TH ED. § 25.25, at 378 (1997).

To be effective, there must be both an offer of dedication and acceptance: "that is, the landowner 'offers' up its property to the municipality and the municipality 'accepts' [it]." Siegel, *supra* at 919; *see Morin v. City of Somersworth*, 131 N.H. 253, 255 (1988). "The acceptance requirement generally protects the public from having an undesirable dedication thrust upon it, as where the concomitant burdens of maintaining a street, park, or other public service outweigh the public benefits." 77 AM. JUR. PROOF OF FACTS 3D § 13, at 37 (2004). Acceptance of a street, thus, has "broad legal implications. It turns the street into a public highway, and thereby renders the accepting city or town liable for its construction and maintenance, or for accidents happening upon it." *Polizzo*, 126 N.H. at 401-02 (quotation and ellipsis omitted). As we explained in *State v. Atherton*, 16 N.H. 203, 210-11 (1844), if acceptance were not required, "it would be a great hardship upon towns if an individual could lay out a way upon his own land, throw it open to the public, and then oblige the town to charge themselves with the maintenance and repairs of it."

Both an offer to dedicate and an acceptance may be express or implied. Siegel, *supra* at 919-20. Express acts that may constitute offers to dedicate include dedicating by deed, recording a plat and selling lots with reference to a plat. *Id.* at 919. Under New Hampshire law, conveying lots by reference to a recorded plan that shows the subdivision of a tract with proposed streets is one way to offer to dedicate a street to public use. 16 P.

LOUGHLIN, MUNICIPAL LAW AND TAXATION § 45.01, at 422-23 (1993); *see Polizzo*, 126 N.H. at 401. "Dedications also can be implied from circumstances or by acts or conduct of the owner that clearly indicate an intention to devote land to public use or from which a reasonable inference can be drawn." Siegel, *supra* at 919 (quotation omitted). Because "[t]he intent of the dedicator is the foundation and life of all dedications, . . . [it] must be clearly and unequivocally manifested." 11A MCQUILLIN, *supra* § 33.36, at 413.

■ Similarly, acceptance may be by express acts that include adopting an offer of dedication by ordinance or formal resolution, or implied by acts such as opening up or improving a street, repairing it, removing snow from it, or assigning police patrols to it. Siegel, *supra* at 919-20. "[P]roof of acceptance by the public must be unequivocal, clear and satisfactory, and inconsistent with any other construction." 11A MCQUILLIN, *supra* § 33.54, at 472-73.

*C. Arguments on Appeal*

In this case, the parties did not dispute that the 1928 subdivision plan constituted an offer to dedicate the paper street for public use. They disputed whether: (1) the 1928 offer had ever been accepted; (2) there were subsequent "rededications" of the street for public use; and (3) any of these subsequent rededications were accepted. The trial court found that the 1928 offer had not been accepted and that there had not been any subsequent rededications of the street for public use. The Plonskis challenge these findings on appeal.

*1. Acceptance of 1928 Offer*

When the 1928 offer to dedicate the paper street for public use was made, New Hampshire law required that, to be effective, the offer had to be accepted within twenty years. *See* RSA 231:51 (1982) (amended 1989). We assume, without deciding, that, as the parties assert, the twenty-year period ran from the date upon which the last lot was sold pursuant to the subdivision plan. *See Duchesnaye v. Silva*, 118 N.H. 728, 731 (1978). The trial court found, and the parties do not dispute, that the last lot was sold pursuant to the 1928 subdivision plan in 1951. Thus, to prevail, the Plonskis had to prove that the offer was accepted by 1971.

The Plonskis concede that the Town has never formally accepted the offer to dedicate the paper street to public use. Accordingly, we confine our analysis to whether the trial court erred when it found that there was no implied acceptance of the paper street for public use by 1971. Based upon our review of the record submitted on appeal, we hold that this

finding is supported by the evidence and is not erroneous as a matter of law.

The trial court credited the testimony of Roberta Stearns, who testified that, between 1942 and 1963, the entire area shown on the 1928 subdivision plan was "basically [her] playground." She and other neighborhood children would "just be all over," riding their bikes or walking, and that teenagers used the area to "park." She testified that people accessed Chapman Brook by way of two paths in the area of the paper street. These paths were not dirt roads because they "[weren't] used that often." Photographs of the area from 1953 and 1961 failed to depict the paths about which Stearns testified.

The trial court also credited the testimony of Malcolm Gilman, who has lived in the area off and on since 1919. He testified that the entire area was open and that there was no designated roadway or path where the paper street is now located. He asserted that this area was "an open area or a field or a sand pit, if you want to call it that. There was nothing on it."

■ Based upon this testimony, the trial court reasonably could have found that the land upon which the paper street is now located was not impliedly accepted by the Town for public use before 1971. To constitute implied acceptance by the Town, the use by the public "must be unequivocal and consistent with the purpose of the dedication." Cunningham & Tischler, *Dedication of Land in New Jersey*, 15 RUTGERS L. REV. 377, 398 (1961); *see San Francisco v. Canavan*, 42 Cal. 541, 554 (1872) ("[A]cceptance is generally established by the use by the public of the land for the purpose to which it had been dedicated."). Here, the use of the land underneath the paper street for recreational purposes or for "parking" was insufficient to establish acceptance of the street for use as a public road. *See Kiernan v. Primavera*, 262 A.2d 910, 916 (N.J. Super. Ct. Ch. Div. 1970) (use by public of property as a parking lot was insufficient to show acceptance of property for public use as a street).

The Plonskis contend that the use of the one-rod right of way by their predecessors-in-title and invitees constituted use of the paper street by the public and, therefore, implied acceptance by the Town. We will assume, without deciding, that, as the Plonskis assert, "[p]ublic use of even *part* of a proposed street's length constitutes acceptance by public user for the *entire* length." Even so, we hold that use by the Plonskis' predecessors-in-title and their invitees of the one-rod right of way was insufficient, as a matter of law, to establish acceptance of the paper street by public use.

■ To establish acceptance by public use, the Plonskis had to demonstrate that the paper street was used "not just by the lot owners and their guests." *Catalano v. Town of Windham*, 133 N.H. 504, 510 (1990).

"Limited use by [the lot owners or by] neighboring owners ... [does] not rise to the height of unequivocal acts of acceptance by public use." *McInnis v. Town of Hampton*, 112 N.H. 57, 61 (1972). As a matter of law, therefore, use by the Plonskis' predecessors-in-title and their invitees of the one-rod right of way was not "public" use and, therefore, did not establish acceptance of the paper street by public use.

The Plonskis also assert that the trial court erred by requiring them to show that the public used the area continuously for twenty years. They assert that while continuous public use for twenty years is required to establish a public highway by prescription, it is not required to establish a public highway by dedication and acceptance. *See* RSA 229:1; *see also Blagbrough Family Realty Trust*, 155 N.H. at 36. We need not decide, in this opinion, the quantum of public use necessary to establish implied acceptance of a dedicated road. In this case, the use established either was not by the "public" or was not for use as a street.

### 2. Subsequent Rededications

The Plonskis next argue that, after 1971, the paper street was "rededicated" for public use. They contend that, after 1971, the Hershes became owners of the entire fee interest in the proposed street and they expressly rededicated it in 1996 when they filed a plan to subdivide their lot and/or in 1998 when they filed a boundary line adjustment plan and then sold a lot pursuant to that plan.

Alternatively, they assert that, after 1971, the Goodwins and the Hershes each had a fee simple interest in the paper street to its center line. *See Duchesnaye*, 118 N.H. at 732. The Hershes, they argue, rededicated their half of the street in 1996 and/or in 1998. The Goodwins, they contend, rededicated their half of the paper street in 1987, when they filed a plan to subdivide their lot, and in 1997, when they sold one of the subdivided lots. They assert either that these subsequent dedications have been accepted or that they remain open and that the trial court erred when it found to the contrary.

We first address whether the Hershes' 1996 subdivision plan and/or 1998 boundary line adjustment plan clearly manifested their intent to rededicate either the entire paper street, assuming they owned it, or their half of it, for public use. *See* 11A MCQUILLIN, *supra* § 33.36, at 413-14. While ordinarily the question of whether the property owner intended to dedicate land for public use is a question of fact, "[t]he construction of a plat is generally one of law for the court." *Id.* § 33.41, at 426-27.

"In construing plats and maps as to dedications, courts will give effect to their plain meaning and intent, exhibited by their outlines as well

as by their words." *Id.* § 33.25, at 374. "The document must be construed as a whole." *Id.* at 374-75. "Where the meaning is doubtful, the practical construction of the plat by the parties will be accepted . . . ." *Id.* at 375. "[T]he court may consider representations made by those making the plat as well as their subsequent conduct." *Id.* at 376. Within reasonable limits, the court will construe a dedication as to benefit the public rather than the donor. *Id.* Where the plat or map is complete and unambiguous, parol evidence is inadmissible. *Id.* at 377. If the plat or map is uncertain and ambiguous, parol evidence is admissible. *Id.* "In such a case, surrounding circumstances and even extrinsic evidence may be considered for the purpose of determining the real intention of the plattor." *Id.* If the intent to dedicate "is to be gathered from writings, they must clearly manifest the intent to dedicate." *Id.* § 33.36, at 413-14.

 The Hershes' 1996 subdivision plan does not clearly and unequivocally manifest their intent to rededicate the paper street for public use. *See infra* App. D. Although the plan shows the paper street, as well as the Plonskis' one-rod right of way, it refers to both of these as rights of ways. It does not refer to the paper street as a "proposed" street or a "public" street, but as a right of way, just as it refers to the Plonskis' private one-rod right of way. *See Wright v. Town of Matthews*, 627 S.E.2d 650, 659 (N.C. Ct. App. 2006) (deed that did not specify whether right of way was private or public did not constitute offer to dedicate public right of way). At best, the plan shows the paper street to demonstrate the location of one of the boundaries of Lot 2 of the Hershes' proposed subdivision. "[S]imply placing a line or a mark on a plat or delineating a way or a street for boundary purposes is insufficient to establish conclusively the original owner's intent to offer the property for dedication." 11A MCQUILLIN, *supra* § 33.30, at 396.

The Hershes' 1998 boundary line adjustment plan similarly refers to the paper street and to the one-rod right of way as "right[s] of way(s)." *See infra* App. E. Thus, it too fails to clearly and unequivocally manifest the Hershes' intent to dedicate the paper street for public use.

We next address whether the Goodwins' 1987 subdivision plan clearly and unequivocally manifested their intent to rededicate their half of the paper street for public use. This plan, like the Hershes' 1996 subdivision plan and 1998 boundary line adjustment plan, refers to the one-rod right of way and the paper street as rights of ways and thus, on its face, does not clearly and unequivocally manifest the Goodwins' intent to dedicate the paper street for public use. *See infra* App. C.

We therefore conclude, as a matter of law, that the Hershes' 1996 subdivision plan, their 1998 boundary line adjustment plan and the

Goodwins' 1987 subdivision plans did not "rededicate" the paper street for public use. Because these plans did not rededicate the paper street for public use, selling lots pursuant to them also did not constitute rededications of the paper street for public use.

Although the Plonskis assert that the Hershes' 1996 subdivision plan, their 1998 boundary line adjustment plan and the Goodwins' 1987 subdivision plan referred to the paper street "in exactly the same way" as did the 1928 subdivision plan, they are mistaken. Unlike the other plans, the 1928 subdivision plan did not refer to the paper street as a right of way and did not depict the one-rod right of way.

*Affirmed.*

BRODERICK, C.J., and DUGGAN, GALWAY and HICKS, JJ., concurred.