Rockingham
No. 2009-075

BRENTWOOD VOLUNTEER FIREMAN'S ASSOCIATION

v.

DANIEL E. MUSSO, SR.

Submitted: November 17, 2009
Opinion Issued: December 4, 2009

*Craig N. Salomon*, of North Hampton, by brief, for the petitioner.

*Michael E. Chubrich*, of Portsmouth, by brief, for the respondent.

DALIANIS, J. The respondent, Daniel E. Musso, Sr., appeals an order of the Superior Court (*Nadeau*, J.) granting the petition to quiet title and for temporary and permanent injunctions filed by the petitioner, Brentwood Volunteer Fireman's Association. We affirm.

The record supports the following facts. Since 1992, the respondent has operated a motor vehicle repair business on a parcel of land in Brentwood, approximately one acre in size, which he eventually purchased in 1995. The deed to him described the parcel as

> lying on the Easterly side of [Crawley Falls Road] . . . and bounded . . . Westerly by said road and Easterly by land of G. Russell Rowe, the same being the mill yard and mill privilege situated on the Exeter River at Crawley's Falls, so-called, being the middle dam or privilege at said Falls, together with all the mills and machinery situated thereon, and also the mill dam and the right of the flowage connected therewith, and all land connected with said privilege on both sides of said River.

Also since 1992, the respondent has, with the petitioner's permission, used land located across Crawley Falls Road for additional customer parking and storage. This land is the subject of the instant litigation.

The disputed parcel is located within a larger parcel owned by the petitioner. A deed to the disputed parcel describes it as a triangular tract of land "on the westerly side of . . . Crawley Falls Road[] and on the southerly side of the Exeter River," bounded "Easterly by [Crawley Falls Road], Southwesterly by land of the heirs of Joseph Sandborn and Northerly by said Exeter River together with the Mill Privileges and all right in the dam across the river."

The petitioner brought the present petition to defend against the respondent's claim that he owned the disputed parcel and to enjoin him from using it to store firewood, various pieces of equipment and registered and unregistered motor vehicles. The respondent argued that because his deed included a mill privilege, he owned the disputed property. The trial court rejected this claim, ruling that any mill privilege the respondent may have possessed was lost by adverse possession or abandonment.

On appeal, the respondent contends that this ruling was error. He also argues that the trial court erred when it found, based upon a certain

exhibit, that the petitioner owned the disputed property. We address these arguments in turn. We do not address the respondent's assertion that the trial court's decision deprived him of his property without due process in violation of Part I, Article 15 of the State Constitution because he has failed to brief this argument sufficiently and demonstrate that he preserved it for our review. *See Appeal of Omega Entm't*, 156 N.H. 282, 287 (2007); *Bean v. Red Oak Prop. Mgmt.*, 151 N.H. 248, 250 (2004).

In an action to quiet title, the burden is on each party to prove good title as against all other parties whose rights may be affected by the court's decree. *Hersh v. Plonski*, 156 N.H. 511, 514 (2007). A trial court may not render judgment quieting title to disputed property in the absence of parties with a duly recorded interest in the property, unless those parties claimed no interest and the petition so alleged. *Id.* We will uphold the trial court's determination unless it is erroneous as a matter of law or unsupported by the evidence. *Id.*

The respondent first argues that the trial court erred when it ruled that any mill privilege he may have had was lost by abandonment or adverse possession. He contends that "[m]ill rights and mill privileges can be lost or extinguished only by adverse possession or by adverse use that makes it impossible to exercise [those] . . . rights or . . . privileges," and that the petitioner's "desultory occasional use of the Disputed Area" and its construction of "two 'little sheds'" was insufficient to constitute the requisite adverse use.

The term "mill privilege" means "the land and water used with the mill, and on which it and its appendages stand." *Moore v. Fletcher*, 16 Me. 63, 65 (1839). When a mill privilege is conveyed without any exact bounds set forth in the deed, "such deeds have been held to convey so much land as was necessary, and customarily used with the mill." *Maddox v. Goddard*, 15 Me. 218, 224 (1839). We need not address whether the mill privilege granted to the respondent included the right to the disputed property because, as the trial court aptly found, any mill privilege he could have possessed was abandoned long ago.

Contrary to the respondent's assertions, a mill privilege *may* be lost through abandonment. *See* J. ANGELL, A TREATISE ON THE LAW OF WATERCOURSES §§ 496-99, at 571-72 (5th ed. 1854). Abandonment may be found when the owner of a mill site expressly declares that he no longer intends "to keep up the mill, accompanied with correspondent acts, such as removing the dam and mill, and giving notice of such intention to those whose lands he has flowed, and to whom he has paid damages." *Id.* § 497, at 572. Nonuse of the site "for an unreasonable length of time," will also result

in loss of a mill privilege. *Id.* § 498, at 572. "[T]he entire and continued disuse of such mill site for twenty years, is strong *prima facie* evidence of a non-user for an unreasonable length of time; and unless rebutted by clear and satisfactory proof, it is conclusive." *Id.* The trial court found that no mill activity has taken place on the respondent's property since at least 1934. In light of this finding, which the respondent does not dispute on appeal, we hold that the trial court did not err when it found that the respondent's mill privilege was abandoned.

The respondent next asserts that the trial court erred when it found that the petitioner had record title to the disputed property based upon an affidavit from Stuart S. Wilson, Jr. and attached 2007 quitclaim deeds to the petitioner from the shareholders of Delaware Holding Co., Inc., a corporation that previously owned the disputed parcel and dissolved in 1988. The respondent contends that the deeds failed to satisfy the petitioner's burden to prove that it had good title to the property. *See Hersh*, 156 N.H. at 514.

The respondent argues that the petitioner "made no effort to prove the applicable provision of New York law, which controls the question of who owns the assets of a defunct and dissolved New York corporation." He contends that to prove this, the petitioner was required to submit expert testimony "regarding the law controlling New York corporations." Absent such proof, he argues, the petitioner failed to establish that it had good title to the disputed property. We disagree. The respondent does not cite, and we are not aware of, any case to support the proposition that expert witness testimony is required in a bench trial to educate the court about the applicable law. Moreover, it is well established that "[a]fter dissolution, the property of [a] corporation passes to [its] shareholders, subject to the payment of corporate debts." 16A W. FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 8224, at 437 (2003). New York law is in accord. *See* N.Y. Business Corporation Law § 1005 (McKinney 2003).

The respondent next argues that, because Delaware Holding Company, Inc. was a foreign corporation, it could not dissolve and its assets could not pass to its shareholders unless it first registered with the New Hampshire Secretary of State pursuant to RSA 293-A:15.03 (1999). RSA 293-A:15.03 sets forth the procedure by which a foreign corporation may apply for a certificate of authority to transact business in New Hampshire. The respondent has not cited any authority, and we are not aware of any, to support his assertion that dissolution, in and of itself, constitutes "transacting business" in New Hampshire for the purposes of RSA chapter 293-A. We, therefore, reject his contention that the failure of Delaware Holding Company, Inc. to register in New Hampshire precluded the

company from dissolving and from passing its assets to its shareholders in accordance with New York law. The respondent's remaining arguments are without merit and do not warrant further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Affirmed.*

BRODERICK, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.