NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

New Hampshire Water Council
No. 2018-0094

APPEAL OF TOWN OF LINCOLN
(New Hampshire Water Council)

Argued: November 28, 2018
Opinion Issued: June 7, 2019

Upton & Hatfield, LLP, of Portsmouth and Concord (Russell F. Hilliard and Brooke Lovett Shilo on the brief, and Mr. Hilliard orally), for the petitioner.

Gordon J. MacDonald, attorney general (Mary E. Maloney, assistant attorney general, on the brief and orally), for the respondent.

BASSETT, J. The petitioner, the Town of Lincoln, appeals an order of the New Hampshire Water Council upholding a decision by the respondent, the New Hampshire Department of Environmental Services (DES), ordering the Town to repair the Pemigewasset River Levee, a fortified embankment with granite block facing, located along approximately 1,700 feet of the northwesterly bank of the East Branch of the Pemigewasset River in Lincoln. The Water Council found that the Town was the owner of the levee pursuant to RSA 482:11-a (2013), and therefore was obligated under the statute to maintain and repair the levee. We reverse.

The record supports the following facts. In 1912, the Franconia Paper Company constructed the levee on company property along the Pemigewasset

River.  In 1959, the levee was damaged by a flood.  At town meeting in March 1960, the residents of the Town voted to approve a restoration of the levee, to be performed by the United States Army Corps of Engineers.  To facilitate the project, and in order to secure federal funding for the restoration under the Flood Control Act of 1936, the residents authorized the Town to enter into agreements with the Army Corps, and to "acquire any real estate interests" necessary for the restoration project.  In June 1960, the Town executed an Assurance Agreement with the Army Corps (the Assurance), obligating the Town to

> (a) provide without cost to the United States, all lands, easements, and rights-of-way necessary for the construction of the project; (b) hold and save the United States free from damages due to the construction works; (c) maintain and operate all the works after completion in accordance with regulations prescribed by the Secretary of the Army.

In order to satisfy these obligations to the Army Corps, and because the Town did not own the land or the levee, in July 1960 the Town entered into a Right-of-Entry Agreement (the REA) with the fee owner, the Franconia Paper Company.  The REA granted to the Town and the United States the "right to enter upon the . . . lands to perform construction work of any nature necessary in the restoration of the [levee], and to enter upon said lands at any time to inspect the restored [levee] with a view to its proper maintenance and operation."  The REA also provided that the Franconia Paper Company reserved for itself, and its successors and assigns, all rights in the land that would not interfere with those it had granted to the Town and the United States.  Pursuant to these agreements, the reconstruction of the levee was done by the Army Corps.

In 1971, the Franconia Paper Company, then under a new corporate name, conveyed certain parcels of land to the Franconia Manufacturing Corporation by quitclaim deed.  The deed provided that Franconia Manufacturing Corporation was taking the land subject to the rights previously granted to the Town and the United States, and provided that both the Town and the United States held easements enabling them to "enter the premises via the present access road or by whatever route is necessary and convenient at any time to inspect the restored flood control [levee] with a view to its proper maintenance and operation . . . ." (the 1971 deed).  The 1971 deed also provided that

> [t]he [Franconia Manufacturing Corporation], by accepting this conveyance covenants and agrees to assume and discharge the obligations of the [Franconia Paper Company] (assumed by the [Franconia Paper Company] by instruments executed . . . in 1961) to maintain the [levee] on the northerly bank of said East Branch

2

as constructed by and under the supervision of the United States Army Engineers.

In 2011, the levee was severely damaged by Tropical Storm Irene.  In 2014 and 2015, DES inspected the levee and determined that it was a "dam in disrepair," classifying it as a "high hazard [potential] dam."  See RSA 482:2, I, V (2013).  In August 2015, DES issued a Letter of Deficiency to the Town listing the levee's defects and requesting that the Town bring the levee back into compliance.  The Town responded to DES, stating that, although it was not the owner of the levee, it already had plans to complete the needed repairs.  After the Town and DES failed to agree on how to proceed, DES ordered the Town to repair the levee, concluding, without express analysis, that the Town was the owner of the levee.  The Town appealed the order to the Water Council.

The Water Council upheld the DES decision in an order on the parties' cross-motions for summary judgment, interpreting RSA 482:11-a, which provides that "[t]he owner of a dam shall maintain and repair the dam so that it shall not become a dam in disrepair."  RSA 482:11-a.  Although the Water Council found that the Town was not the fee owner of the levee, and had not acquired fee ownership through either the process of dedication and acceptance, see Hersh v. Plonski, 156 N.H. 511, 514-16 (2007), or a vote of the selectmen pursuant to RSA 41:14-a (2012), it also found that the Town was the owner of the levee within the meaning of RSA 482:11-a.  The Water Council stated that

> the Town's argument that it is not the owner of the dam within the meaning of RSA 482:11-a, and therefore not subject to DES regulatory action is rejected.  The Town holds an easement interest in the dam that is sufficient for purposes of imposing on [the Town] the repair and maintenance requirements of [RSA 482:11-a].

The Water Council denied the Town's motion for rehearing, and this appeal followed.

RSA chapter 541 governs our review of Water Council decisions.  See RSA 21-O:14, III (2012).  The party seeking to set aside the Water Council's order bears the burden of proof "to show that the [order] is clearly unreasonable or unlawful."  RSA 541:13 (2007).  "[A]ll findings of the [Water Council] upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable."  Id.  "[T]he order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable."  Id.  "In reviewing the Council's findings, our task is not to determine whether we would have found differently or to reweigh the evidence, but, rather, to determine whether the findings are supported by competent evidence in the record."  Appeal of Cook, 170 N.H. 746, 749 (2018).

We review the Water Council's rulings on issues of law de novo. See id.; RSA 541:13.

The Town argues that the Water Council's decision is clearly unreasonable or unlawful because the Town is not the "owner" of the levee within the meaning of RSA 482:11-a. The Town does not argue that, in order to be an "owner" for the purposes of RSA 482:11-a, the person or entity must be the fee simple owner of the property. Rather, the Town contends that the word "owner" means one who has at least "legal, rightful, or equitable title" to the property at issue. The Town asserts that it does not fall within this definition because its only property interest in the levee — the right of access set forth in the REA — is insufficient to make the Town an "owner" within the meaning of RSA 482:11-a.

DES acknowledges that the Town is not the fee owner of the levee, yet it argues that fee ownership is not required by RSA 482:11-a. In support of this position, DES offers two interrelated arguments. First, citing our recent decision in Appeal of Michele, 168 N.H. 98, 102-05 (2015), it asserts that this court "has already determined that an easement holder is an owner for purposes of RSA 482-A." Second, DES contends that we should apply the definition of "owner" set forth in Michele, and that, if we do, the Assurance, the REA, and the 1971 deed constitute a "series of transactions" sufficient to make the Town an owner within the meaning of RSA 482:11-a. The Town contends that Michele is distinguishable and does not control. For the reasons set forth below, we agree with the Town.

Resolution of the question of whether the Town is an "owner" within the meaning of RSA 482:11-a requires that we engage in statutory interpretation. "Statutory interpretation is a question of law, which we review de novo." Petition of Carrier, 165 N.H. 719, 721 (2013). "In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." Id. "We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning." Id. "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. "The legislature is not presumed to waste words or enact redundant provisions and whenever possible, every word of a statute should be given effect." Garand v. Town of Exeter, 159 N.H. 136, 141 (2009) (quotation omitted). "We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result." Carrier, 165 N.H. at 721. "Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole." Id. "This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme." Id.

4

RSA 482:11-a provides that "[t]he owner of a dam shall maintain and repair the dam so that it shall not become a dam in disrepair." RSA 482:11-a. The legislature did not define the term "owner." See RSA 482:2 (2013). "When a term is not defined in the statute, we look to its common usage, using the dictionary for guidance." Michele, 168 N.H. at 102 (quotation omitted). Webster's Third New International Dictionary defines "owner" as "one that has the legal or rightful title whether the possessor or not." Webster's Third New International Dictionary 1612 (unabridged ed. 2002). Relatedly, it defines "ownership" as "the state, relation, or fact of being an owner: lawful claim or title." Id. These are the same definitions we looked to in Michele, where we were presented with a similar question: whether the easement holders in that case could be considered owners for the purposes of the statute at issue in that case, RSA 482-A:11, II (2013). Michele, 168 N.H. at 101.

In Michele, the easement holders wished to install a seasonal dock in water adjacent to the shoreline property over which the easement holders had an easement. Id. at 100. The easement at issue in Michele provided that the holders of the easement "shall have the right . . . to the exclusive use of said parcel of shore frontage for whatever purposes they may desire." Id. at 100. The easement holders applied to DES for a permit to build the dock, which was granted. Id. On appeal, the landowners argued that DES lacked the authority to issue the permit to the easement holders because only fee owners could apply for a permit. Id. at 101. The landowners primarily based their argument on RSA 482-A:11, II, which provides that "'[b]efore granting a permit under this chapter, the department may require reasonable proof of ownership by a private landowner-applicant.'" Id. at 101-02 (quoting RSA 482-A:11, II (emphasis added)). Because the statute did not define "ownership," we looked to the dictionary definitions set forth above. Id. at 102-03. We acknowledged that these are broad definitions, but, because we "[saw] no reason . . . to limit the meaning of the terms when the legislature did not see fit to do so," we concluded that "ownership," as used in RSA chapter 482-A, was not limited to fee ownership, and did not require possession. Id. at 103. We further concluded in that case that "parties who hold title to a shoreline easement, such as the [easement holders]," were "owners" under RSA 482-A:11, II. Id.

The facts in this case differ significantly from those in Michele. Most importantly, the scope of the easement in this case is far narrower than the one at issue in Michele. In Michele, the easement at issue was expansive, providing the holders of the easement with the legal right to the "exclusive use" of the subject land "for whatever purposes they may desire." Id. at 100. We observed that "an easement is a nonpossessory right to the use of another's land," and that "a grantee takes by implication whatever rights are reasonably necessary to enable it to enjoy the easement beneficially." Id. at 103 (quotations omitted). We concluded, therefore, that "anyone who could build a dock under the common law [could] apply for a dock permit," and that, "[g]iven the broad grant

5

of the . . . easement," the easement holders "[had] a sufficient ownership interest to obtain a dock permit under RSA chapter 482-A." Id. at 104.

Here, the easement is non-exclusive and far narrower in scope. Under the REA, the Town and the United States have only a limited right "to enter upon [the] lands at any time to inspect the restored [levee] with a view to its proper maintenance and operation," whereas the Michele easement gave the easement holders "exclusive use" of the land "for whatever purposes they may desire." Michele, 168 N.H. at 100. The expansive easement in Michele granted exclusive rights that are tantamount to fee ownership — with all of its incidental benefits and burdens. In contrast, the easement at issue in this case is both limited and non-exclusive — the fee owner specifically retained ownership and control over the levee. Accordingly, the facts of this case are distinguishable from Michele, and do not lend support to the argument that the Town is an "owner" within the meaning of RSA 482:11-a.

Nor does the rationale of Michele support the argument that the ownership obligations of RSA 482:11-a should be imposed upon the Town. In Michele, it was crucial to our analysis that the right to apply for a dock permit was reasonably necessary for the easement holders to enjoy the full scope of their easement. See id. at 103. Here, that crucial logical link is absent — the Town is not seeking rights that are reasonably necessary to enjoy its easement and protect its citizens and property; it already holds those rights under the REA. Rather, DES flips the logic of Michele on its head in seeking to impose upon the Town additional ownership obligations under RSA chapter 482. Although DES contends that these obligations "are fully within the scope of the Town's interest," we disagree.

The REA granted only limited rights to the Town and the United States "to enter upon said lands at any time to inspect the restored [levee] with a view to its proper maintenance and operation." The REA did not place any obligations on the Town; rather, it granted rights to both the Town and the United States, reserving for the owner all other property rights that would not interfere with those it had granted to the Town and the United States.

In 1960, the Franconia Paper Company had the capacity to transfer fee ownership — with its attendant rights and obligations — to the Town or any other party, but it did not do so. Rather, the Franconia Paper Company chose to retain ownership and control of the levee, and regarded the levee restoration as a benefit conferred upon it by the United States and the Town. Indeed, the REA recites the restoration of the levee as the consideration received by the company in exchange for granting the access rights to the Town and the United States. Further, in 1971, when the Franconia Paper Company, then operating under a different name, did transfer fee ownership, the new owner explicitly agreed "to assume and discharge the obligations of the [Franconia Paper Company] . . . to maintain the [levee] on the northerly bank of said East

6

Branch as constructed by and under the supervision of the United States Army Engineers." Thus, it is evident that the Franconia Paper Company did not understand or intend that, simply by entering into the REA, it had shifted the obligation of ongoing levee repair and maintenance to the Town. See Arcidi v. Town of Rye, 150 N.H. 694, 703 (2004) (observing that, in order to determine the scope of an easement, we consider the parties' intent in light of the surrounding circumstances at the time the easement was granted).

In support of its position, DES contends that, in the Assurance, the Town "agreed to take responsibility for the [l]evee's ongoing maintenance and repair."[1] However, the fact that the Town undertook certain maintenance obligations in the Assurance does not mean that the additional obligations of "ownership" under RSA 482:11-a can or should be imposed upon the Town. In the Assurance, a contract that, by its terms, does not convey a property interest, the Town agreed with the Army Corps to maintain and operate the levee "in accordance with regulations prescribed by the Secretary of the Army." The Town did not assume ownership of the levee, nor did it agree to maintain and operate the levee in accordance with state regulations applicable only to "[t]he owner." RSA 482:11-a. Thus, given the Town's limited property interest under the REA, and the Town's limited contractual agreement with the Army Corps, the rationale in Michele does not support imposing the additional obligations of ownership on the Town.

Michele is also distinguishable because it involved a different statute and regulatory regime than is at issue in this case. Unlike RSA 482-A:11, II, the statute at issue in Michele, which applies to "a private landowner-applicant" seeking a wetlands permit, the statute at issue here, RSA 482:11-a, applies only to "[t]he owner" of a dam. If the legislature had intended to place the obligations of RSA 482:11-a on a broader class of persons or entities, it knew how to do so. See, e.g., RSA 482:11, I (2013) (using the terms "owner or contractor"); RSA 482:9 (2013) (using the term "person").

Nonetheless, the dissent argues that the statutory purpose, to lessen flood damage and enhance public safety, supports a broad construction of the word "owner" under the statute. See RSA 482:1 (2013). However, we must observe, as we did in Michele, that there is no evidence that the purpose of RSA 482:11-a is "to change the balance of property rights between fee owners and easement holders from what it was under the common law." Michele, 168 N.H. at 103. In essence, the dissent would allow a broad statutory purpose to empower DES to impose new ownership obligations on the holder of a limited easement, thereby altering the balance of property rights between the Town

---

[1] The Town contends that DES is impermissibly asking the Court to enforce the terms of the Assurance — an agreement to which DES is not a party. However, DES, in its brief and at oral argument, explicitly disclaims that it is seeking to do so. Rather, DES is using the terms of the Assurance to support its statutory argument.

7

and the fee owner(s) — to say nothing of the potential impact on landowner liability. We have cautioned before that "'it frustrates rather than effectuates legislative intent simplistically to assume that <u>whatever</u> furthers the statute's primary objective must be the law.'" <u>State v. Dor</u>, 165 N.H. 198, 205 (2013) (quoting <u>Rodriguez v. United States</u>, 480 U.S. 522, 526 (1987) (<u>per</u> <u>curiam</u>)); <u>see also</u> <u>Adoption of T.K.J.</u>, 931 P.2d 488, 492 (Colo. App. 1996) (observing that "liberal construction does not permit a court to rewrite the statute"). Therefore, absent evidence that the legislature intended such a result, we believe it would be error to allow the broad statutory purpose to override the specific language chosen by the legislature, which places these obligations only on "[t]he owner." RSA 482:11-a; <u>see also</u> <u>Carrier</u>, 165 N.H. at 721 (observing that "[w]e interpret legislative intent from the statute as written").

Moreover, in <u>Michele</u>, we observed that the regulations promulgated by DES under RSA chapter 482-A were consistent with our holding because the regulations contemplated that "only applicants for major projects need be the fee owner; applicants for minor projects, like the [easement holders'] dock, <u>may</u> <u>have a lesser ownership interest</u>." <u>Michele</u>, 168 N.H. at 104 (emphasis added). Here, the regulations promulgated under RSA chapter 482 do not contemplate different levels of ownership, and therefore do not support the position that the Town's easement gives rise to "ownership" under RSA chapter 482. Moreover, the regulations under RSA chapter 482 imply that the Town's property interest is not sufficient to be deemed "[t]he owner." For example, one of the regulations states that "[i]n lieu of repairing or reconstructing a dam . . . the owner may" either "[r]emove the dam," or "[b]reach or modify the dam." <u>N.H.</u> <u>Admin. R.</u>, Env-Wr 302.04(a). Neither of these options appears to be available to the Town, as they fall outside the scope of the Town's right "to enter upon [the] lands at any time <u>to inspect the restored [levee] with a view to its proper</u> <u>maintenance and operation</u>." (Emphasis added.) Thus, the statute and regulatory regime at issue here are distinguishable from <u>Michele</u>, and do not lend support to the argument that the Town's limited access rights make it "[t]he owner" under RSA 482:11-a.

For these reasons, we agree with the Town that <u>Michele</u> does not control the outcome in this case. For the same reasons, a related argument advanced by DES necessarily fails. DES argues that through a "series of transactions," namely the Assurance, the REA, and the 1971 deed, the Town acquired a sufficient ownership interest in the levee to be deemed an "owner" within the meaning of RSA 482:11-a. However, DES provides us with no case, statute, or other legal authority to support the notion that the contractual obligations set forth in the Assurance, when combined with the rights granted to the Town in the REA and the 1971 deed, are sufficient to establish ownership for purposes of RSA 482:11-a. Absent such authority, the "series of transactions" argument appears to rest solely upon <u>Michele</u>, which we have already distinguished.[2]

---

[2] The dissent protests our rejection of the "series of transactions" argument. However, in an effort

8

Despite these distinctions, the dissent contends that <u>Michele</u> controls the outcome of this case, and relies on <u>Michele</u> for the broad proposition that "a person who holds an easement interest in property is an 'owner' thereof." <u>Michele</u>, 168 N.H. at 105. However, the holding of <u>Michele</u> was that, given the scope of the exclusive rights conferred by the easement, the easement holders had "a <u>sufficient</u> ownership interest <u>to obtain a dock permit under RSA chapter 482-A</u>." <u>Id</u>. at 104 (emphasis added). The holding in <u>Michele</u> is necessarily confined to the question and facts presented in that case. The broader proposition relied on by the dissent was not essential to the outcome in <u>Michele</u>, is therefore dicta, and it does not control the outcome here. <u>See</u> <u>In re Estate of Norton</u>, 135 N.H. 62, 64 (1991) (observing that nonessential remarks are non-binding dicta).

Moreover, all easements are not created equal. To employ the traditional law school metaphor of a "bundle of sticks" representing property rights, here the Town holds but one stick out of the bundle. By comparison, the easement holders in <u>Michele</u> held nearly all of the sticks in the bundle — the fee owners retained no rights of use or control over the lakefront property, having transferred those rights to the easement holders. <u>See</u> <u>Michele</u>, 168 N.H. at 100. Thus, in contrast to <u>Michele</u>, the Town's "single stick" is not a sufficient ownership interest to deem it "[t]he owner" under RSA 482:11-a. Simply put, the Town "owns" an easement, it does not "own" the levee.

The dissent nonetheless concludes that it is "eminently fair and reasonable" to impose the obligations of RSA 482:11-a upon the Town because the levee was "restored for the benefit of the public using public monies as a result of the vote of the Town's residents." However, the question before us is not whether we think it would be reasonable or fair for the legislature to impose these obligations upon the Town, but rather, whether the legislature <u>did</u> impose the obligations of "ownership" on an entity, such as the Town, with a limited right of access. We conclude that it did not. The legislature made a judgment, and we must interpret the language that it enacted. <u>See</u> <u>Carrier</u>, 165 N.H. at 721. "The wisdom, effectiveness, and economic desirability of a statute is not for us to decide. Nor may we substitute our judgment for that of the legislature." <u>Smith Insurance, Inc. v. Grievance Committee</u>, 120 N.H. 856, 863 (1980).

---

to bolster its position, the dissent cites authority that actually supports a different and uncontested proposition — in fact, one already embraced by the majority — that, in determining the scope of an easement, <u>all</u> of the documents and surrounding circumstances should be considered. We agree. The dissent nonetheless fails to consider all of the circumstances surrounding the granting of the access easement. It focuses on two documents, failing to take into account the fact that the Franconia Paper Company explicitly retained ownership and control over the levee in the REA, and that, in the 1971 deed, its successor agreed to assume and discharge the Franconia Paper Company's obligation to maintain the levee.

In sum, because the Water Council's conclusion that the Town is an "owner" of the levee under RSA 482:11-a is dependent on its flawed reasoning that Michele controls the outcome in this case, the Town has met its burden to show that the order of the Water Council is clearly unreasonable or unlawful. See RSA 541:13. Accordingly, although we need not decide the precise degree of ownership that makes a person or entity an "owner" for the purposes of RSA 482:11-a, we hold that the limited access easement held by the Town in this case falls short of that threshold. Because our holding on this issue is dispositive of this case, we decline to address the parties' other arguments. Dionne v. City of Manchester, 134 N.H. 225, 230 (1991).

Reversed.

HICKS and HANTZ MARCONI, JJ., concurred; LYNN, C.J., and DONOVAN, J., dissented.

LYNN, C.J., and DONOVAN, J., dissenting. At town meeting in March 1960, the residents of the Town of Lincoln (Town) voted to approve "the proposed local protection project for the Restoration of the Flood Control Dike" at issue in this case, and to authorize the selectmen to "acquire any real estate interests for said project." In order to secure federal funding for the restoration project, the selectmen executed an Assurance Agreement with the United States Army Corps of Engineers obligating the Town to, inter alia, "[m]aintain and operate all the works after completion in accordance with regulations prescribed by the Secretary of the Army." In addition, the Town entered into a Right-of-Entry Agreement with the fee owner that granted it and the United States the "right to enter upon the . . . lands to perform construction work of any nature necessary in the restoration of the dike, and to enter upon said lands at any time to inspect the restored dike with a view to its proper maintenance and operation." Thereafter, the Army Corps of Engineers restored the dike. No party disputes that the dike in this case constitutes a "dam" within the meaning of RSA 482:11-a, which provides in part that "[t]he owner of a dam shall maintain and repair the dam so that it shall not become a dam in disrepair." RSA 482:11-a (2013). Rather, the parties dispute whether the Water Council erred in ruling that "owner" includes the Town, thereby obligating the Town to maintain and repair the dam pursuant to RSA 482:11-a.

In Appeal of Michele, 168 N.H. 98 (2015), the court was presented with a similar question: whether the easement holders in that case could be considered "owners" for the purposes of the statute at issue in that case, RSA 482-A:11, II (2013). Michele, 168 N.H. at 101. Because the term was not defined by the legislature, the court looked to its common usage, using the dictionary for guidance. Id. at 102. The court noted that Webster's Third New International Dictionary defines "owner" as "one that has the legal or rightful title whether the possessor or not." Webster's Third New International Dictionary 1612 (unabridged ed. 2002); Michele, 168 N.H. at 102-03. The

10

court further noted that an easement "is a nonpossessory right to the use of another's land." Michele, 168 N.H. at 103 (quotation omitted). Thus, the court stated that "a person who holds an easement interest in property is an 'owner' thereof." Id. at 105.

The majority does not disagree that the Town holds an easement to enter upon the land "to perform construction work of any nature necessary in the restoration of the dike, and to enter upon said lands at any time to inspect the restored dike with a view to its proper maintenance and operation." The majority concludes, however, that the facts in Michele are distinguishable, and therefore Michele should not govern this case. We are not persuaded. As the court explained in Michele, the term "owner" is broadly defined and requires neither fee ownership nor possession. The court noted that there is no reason to limit the meaning of the term when the legislature has not seen fit to do so. Id. at 103. Rather, in determining whether the easement holder had a sufficient ownership interest to be an "owner," the court looked to the purpose of the statute. Id. at 103-04.

Similarly, here the legislature has not limited the term "owner." Unlike the majority, we again see no reason to limit the meaning of the term when the legislature did not see fit to do so.[3] See id. at 103. Thus, we would construe it broadly in accordance with its common usage. See RSA 21:2 (2012). RSA chapter 482 mandates the repair of dams in disrepair in order to, among other things, lessen flood damage and enhance public safety. RSA 482:1 (2013). The issue, accordingly, is whether in light of this purpose the Town has a "sufficient ownership interest" to be considered the "owner" under RSA 482:11-a. See Michele, 168 N.H. at 104. The majority faults DES for not citing "legal authority to support the notion that the contractual obligations set forth in the Assurance, when combined with the rights granted to the Town in the REA and the 1971 deed, are sufficient to establish ownership for purposes of RSA 482:11-a." Significantly, however, the majority does not contend that such authority does not exist. On the contrary, our case law offers ample support for considering all these documents together, along with all the other circumstances of the parties at the time the easement was granted. See Arcidi v. Town of Rye, 150 N.H. 694, 703 (2004) ("our task is to determine the parties' intent in light of the surrounding circumstances at the time the easements were granted"); Dumont v. Town of Wolfeboro, 137 N.H. 1, 5 (1993) ("Defining the rights of the parties to an expressly deeded easement requires determining the parties' intent in light of circumstances at the time the easement was

---

[3] The short answer to the majority's view that "if the legislature had intended to place the obligations of RSA 482:11-a on a broader class of persons or entities, it knew how to do so," supra at 7, is that this contention is based on circular reasoning. The question is not whether the legislature could have imposed liability upon persons or entities other than "owners," but whether an easement holder is an owner within the meaning of the statute. Because under well-established law an easement holder is an owner of property, the legislature had no reason to use an additional term to capture this form of ownership.

granted."). Here, consideration of the entire series of transactions by which the Town acquired its access easement as well as its obligation to the federal government to repair and maintain the levee makes it eminently fair and reasonable to treat the Town as an "owner" of the levee within the meaning of RSA 482:11-a. Indeed, the Town's ownership interest could hardly be more closely tied to the purpose of the statute — the Town's easement is for the purpose of entering upon the land to inspect the restored dike with a view to its proper maintenance and operation. As the majority notes, the easement was obtained in order to satisfy the Town's obligations under the Assurance Agreement with the Army Corps of Engineers, which included the obligation to maintain and operate the dike after completion in accordance with Army regulations. Thus, the easement was intended to permit the Town to carry out its obligation to maintain the dike, thereby lessening flood damage and enhancing public safety, which are stated purposes of RSA chapter 482.

The majority's approach attempts to distance the terms of the Assurance Agreement from the terms of the Right-of-Entry Agreement, rather than reading them together, as the court normally does, see Motion Motors, Inc. v. Berwick, 150 N.H. 771, 777 (2004), in determining whether the Town's easement interest is sufficient to constitute the Town an "owner" of the levee within the meaning of RSA 482:11-a. Only by doing so is the majority able to assert that the Town's "only property interest in the levee" is "the right of access set forth in the REA." Supra at 4 (emphasis added). The reality is that when the two agreements are read together it is clear that the Town voluntarily undertook significant obligations, i.e., to repair and maintain the levee — that accompany its easement right of access. For example, could there be any serious question that the Franconia Paper Company or its successors would not have the right to deny the Town the ability to repair the levee, pursuant to the Town's obligations under the Assurance Agreement, on the ground that doing so would constitute an "overuse" of the easement? The answer obviously is that the paper company would have no such right. Thus, contrary to the majority's intimation, the Town's ownership interest in the property is far more than a right of access simpliciter. In short, when all of the relevant agreements and all of the circumstances are considered together, it is obvious that the Town's interest in the levee represents significantly more than the "single stick" of ownership described by the majority. Under these circumstances, we agree with the Water Council that the Town has a sufficient ownership interest to be considered the "owner" under RSA 482:11-a.[4]

---

[4] The majority rejects this analysis in part upon the ground that DES is seeking to "impose upon the Town" additional ownership obligations under RSA chapter 482. It also notes that the Town, while obligating itself to maintain the dike in accordance with Army regulations, did not agree to maintain it in accordance with state regulations. And it contends that Franconia Paper Company may not have intended to shift "the obligation of ongoing levee repair and maintenance to the Town." In our view, all of these observations miss the mark. The question before us is not whether the Town agreed in 1960 to maintain the dike in accordance with state regulations or whether Franconia Paper Company believed it had shifted the obligation of

12

We are not persuaded that this result is unjust or unreasonable.  See RSA 541:13 (2007) (order shall not be set aside unless court is satisfied, by a clear preponderance of evidence before it, that order is unjust or unreasonable).  The dike was rebuilt as a result of the vote of the Town residents, presumably because the residents believed it was in the public interest to do so.  The Water Council refers in its order to a presentation by the Town in 2016 in which the Town represented that the purpose of the dike is to protect lives and property in the floodway, which consists not only of private dwellings that then generated over $311,000 in annual property tax revenue, but also of several parcels of public and Town land.  The dike was rebuilt using public monies, obtained in part as a result of the Town's promise to the Army Corps of Engineers to maintain it.  In essence, this was a public works project intended for the safety and the benefit of the community.  The legislature has imposed a duty, independent of any agreements among the entities involved in this case, to maintain and repair the dike.  We find nothing unjust or unreasonable in concluding that the legislature has imposed upon the Town the obligation to maintain and repair a dike restored for the benefit of the public using public monies as a result of the vote of the Town's residents.[5]

As the majority correctly notes, the question before us is whether the legislature imposed the duty to maintain and repair a dam upon an entity, such as the Town, with an easement.  The majority further correctly notes that we "interpret legislative intent from the statute as written."  Here, the legislature has used the term "owner" to describe those entities who should be charged with maintaining and repairing dams — a term that is broadly defined and that requires neither fee ownership nor possession.  Moreover, the legislature has itself stated the purposes of the statute.  RSA 482:1 (2013).

---

repair and maintenance to the Town.  Nor is this a case in which DES is creating new obligations to impose upon the Town.  Rather, the issue is whether the legislature intended to impose the obligation of maintaining and repairing a dam upon an entity with an easement under the circumstances of this case.  The parties do not dispute that the restored dike in this case is a "dam" for purposes of RSA 482:11-a.  Thus, the issue is whether the legislature intended "owner" in RSA 482:11-a to apply to the Town under the circumstances of this case.  In light of the legislature's use of the broad term "owner" and in light of the stated purpose of the statute, we are persuaded that the legislature did intend that an entity that voluntarily undertook an obligation to the federal government to maintain a dike that it voted to have restored using public monies, and that obtained a property interest for the specific purpose of being able to enter upon the land to carry out that obligation, should fall within the definition of "owner" for the purposes of RSA 482:11-a.

[5] We note that we have not been asked to decide whether any party other than the Town could also be considered "the owner" under RSA 482:11-a, resulting in more than one party having the obligation to maintain and repair the dike, or whether, if such an obligation can be imposed on multiple parties as "owners," an owner that has incurred more than its fair share of the costs of that obligation may seek contribution from the other owners.  See RSA 21:3 (Supp. 2018) (words importing the singular number may be applied to several persons or things).  Accordingly, we express no opinion as to those questions.

Thus, our broad construction of the term "owner" is the result of interpreting legislative intent from the statute as written.

Accordingly, we respectfully dissent.